United States Court of Appeals,

Eleventh Circuit.

No. 95-9575.

Charles E. NICHOLSON, John W. Smith, Plaintiffs-Appellants,

v.

WORLD BUSINESS NETWORK, INC.; World Charities, Inc.; World Lottery Services; Edward M. Peabody; N.D. McCullar, Defendants-Appellees.

Feb. 18, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:93-CV-2328), WBH), Willis B. Hunt, Jr., Judge.

Before ANDERSON and CARNES, Circuit Judges, and CUDAHY[*], Senior Circuit Judge.

CUDAHY, Senior Circuit Judge.

If an employer fails to pay managerial employees the salary owed them, can the employees not only assert breach of contract but also invoke federal labor law? Charles Nicholson and John Smith, the plaintiff-appellants, argue that they can.

Employees with the kind of jobs that Nicholson and Smith had cannot generally look to the Fair Labor Standards Act (FLSA) for protection, for the FLSA does not apply to "administrative employees"—a category that includes lower-than-top tier managerial staff. The district court concluded on summary judgment that Smith was an administrative employee, and a jury by special verdict found the same for Nicholson.

Nicholson and Smith claim that the district court erred, and that as a matter of law, they cannot be administrative employees.

---

[*]Honorable Richard D. Cudahy, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

One criterion for an employee's falling into the class of "administrative employees" is a weekly salary of $250 or more. Nicholson and Smith claim that because they never received a dime, they cannot be administrative employees, and, therefore, the bar to their relying on the FLSA drops away. This is an unusual interpretation of the FLSA, one that would convert an entire category of state contract law actions into federal labor suits. Because Congress did not intend such a result for well-compensated, highly responsible positions, we reject the proffered interpretation.

Plaintiffs raise two other issues. The first is whether there is no evidence to support the jury's special verdict against Nicholson. The second is whether defendant N.D. McCullar was an employer under the FLSA. The first issue we dispose of quickly, and the second evaporates with our rejection of the "administrative employee" claims. We affirm.

I. A Russian imbroglio

Defendants McCullar and Edward Peabody served in a variety of executive roles for a web of companies including World Business Network, Inc., World Charities, Inc. and World Lottery Services, Inc. The precise details of the web's structure are inconsequential, because the companies suffered a default judgment and only McCullar and Peabody remain as defendants on appeal. What is consequential is that this web of companies collaborated with Gil Bachman (not a party to this suit) to create private lotteries in the former Soviet Union. With claimed expertise in lottery operations, Bachman served as point man for defendants McCullar and

Peabody in their dealings with plaintiffs Nicholson and Smith.

Plaintiff Smith had worked on lotteries with Bachman before. Then, in November 1992, Bachman convinced Smith to help on the lottery enterprise in the former Soviet Union. Smith was to travel to Russia for five to six weeks at a salary of $2000 per week. Smith took care of some initial business in America for a week and a half, and then departed on February 26, 1993. He stayed in Russia until March 20. While there, Smith performed spadework for the lottery business: he established a security system, organized tickets and prizes and inspected operations. Sometime near the end of Smith's stay, Bachman flew to Russia and fired him. Smith was never paid. He filed suit on October 13, 1993 against the web of companies and McCullar and Peabody, alleging breach of contract and violation of the FLSA. On the FLSA claim, he sought unpaid minimum wages, overtime compensation, an equal amount in liquidated damages and attorneys' fees, as 29 U.S.C. § 216(b) provides. Because the FLSA does not apply to work performed in a foreign country, 29 U.S.C. § 213(f), Smith's damages would be confined to the salary he earned before departing for Russia.

Plaintiff Nicholson did his work entirely in the United States. Like Smith, Nicholson's relationship with Bachman antedated these dealings. In February 1993, Nicholson began his employ as a recruiter for Bachman's and defendants' Russian enterprise, for which he was paid $5,000 per month. A few months later, Nicholson moved beyond recruiting to some participation in sales and trading. Nicholson says he was never paid for this sales and trading work. Nicholson filed suit in tandem with Smith on

October 13, 1993, making the same allegations: that the companies had breached their contract with Nicholson, and that all the defendants had violated the FLSA.

Defendants filed a motion for summary judgment against both plaintiffs. On the FLSA claims, the district court refused to rule on whether Smith and Nicholson were employees or independent contractors (contractor status would have exempted them from the FLSA). The district court then assumed arguendo that Nicholson and Smith were employees, and turned to defendants' next affirmative defense: that Smith and Nicholson fell outside the FLSA's ambit as "administrative employees," a term we examine in the next section (II). The district court decided that the defendants had proven that Smith fell into that class, but the facts of Nicholson's employment were inconclusive. The suit proceeded to trial, whereupon a jury returned a special verdict holding that Nicholson was an employee—but an administrative employee.

Meanwhile the companies had stopped representing themselves in the lawsuit, presumably because they had been emptied of cash and other assets. The district court entered a default judgment against them for breach of contract. But, because the district court had earlier held that defendants McCullar and Peabody were not personally liable for the contract claim, the default judgment, against moneyless companies, amounted to a hollow victory for Nicholson and Smith.

After the special verdict on the FLSA claim, Nicholson filed a motion for judgment as a matter of law or, in the alternative, for a new trial. His argument was the same claim that he and Smith

present on appeal:  that they could not have been administrative employees as a matter of law.  The district court denied the motion.  Reviewing a question of law like this one *de novo, Reich v. Davis,* 50 F.3d 962, 964 (11th Cir.1995), we now turn to whether the district court denied the motion properly.

II. Were Nicholson and Smith administrative employees?

When Congress passed the FLSA almost sixty years ago, it sought to end the presence in American commerce of "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).  The levers Congress chose were a minimum wage, mandatory overtime pay and curbs on child labor. 29 U.S.C. §§ 206, 207, 212.  As the Supreme Court observed in 1945, the "Act seeks to eliminate substandard labor conditions, including child labor, on a wide scale throughout the nation."  *Roland Electrical Co. v. Walling,* 326 U.S. 657, 669-70, 66 S.Ct. 413, 419, 90 L.Ed. 383 (1946).

The goal of ameliorating the uglier side of a modern economy did not imply that all workers were equally needful of protection. The chief financial officer of a company, for instance, would be less likely to be exploited than a janitor or assembly linesman. So Congress removed "any employee employed in a bona fide executive, administrative, or professional capacity ... or in the capacity of outside salesman" from the FLSA's strictures.  29 U.S.C. § 213(a)(1).  Congress delegated authority to the Secretary of Labor to define these terms.

The implementing regulations create two tests, the long and

the short, for whether a person is an "administrative employee." 29 C.F.R. § 541.2. The long test includes five parts, all of which the employee's job must satisfy. The first four parts hone in on what kind of work the employee does:

(1) Is the employee's primary duty "office or nonmanual work directly related to management policies or general business operations"?

(2) Does the employee "customarily and regularly exercise[ ] discretion and independent judgment"?

(3) Does she "regularly and directly assist[ ] a proprietor, or an employee employed in a bona fide executive or administrative capacity," *or* does she "perform [specialized or technical work] under only general supervision," *or* "execute under only general supervision special assignments and tasks"?

(4) Do these tasks take up the bulk (80% for non-service employees, 60% for service and retail employees) of the employees' time? 29 C.F.R. § 541.2(a)-(d). If the answer to all four questions is yes, then the long test proceeds to the final question.

Assuming that an employee has met the previous four tests, the fifth requires that the employee "is compensated for his services on a salary or fee basis at a rate of not less than $155 per week ... exclusive of board, lodging or other facilities." 29 C.F.R. § 541.2(e). The regulations also offer a short test, a safe harbor for employers, which an employee may satisfy even if she fails the long test. The short test exempts any employee who "is compensated on a salary or fee basis at a rate not less than $250 per week"

(again exclusive of board, lodging, or other facilities), and who, roughly speaking, meets criteria (1) and (2) above. 29 C.F.R. § 541.2(e)(2). Smith and Nicholson argue that the phrase " *is* compensated" means just that—the employee must be actually paid. (Emphasis added.) If she is not paid at all, then she is not an administrative employee.

We are mindful of the Supreme Court's admonition that courts closely circumscribe the FLSA's exemptions. "Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the interest of Congress." *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945). But we are also heedful of the rationale for interpreting the FLSA in this way: "To extend an exemption to other than those plainly and unmistakably *within its terms and spirit* is to abuse the interpretative process and to frustrate the announced will of the people." *Id.* (emphasis added). To read the FLSA blindly, without appreciation for the social goals Congress sought, would also do violence to the FLSA's spirit.

Before turning to the specifics of Nicholson's and Smith's argument, we put the salary test in context.[1] The test dates from an era during which whether an employees was on salary or was paid by the hour revealed much about his job.[2] Because being on salary

---

[1]*See generally* Mark J. Ricciardi and Lisa G. Sherman, *Exempt or Not Exempt Under the Administrative Exemption of the FLSA ... That Is the Question,* 11 LABOR LAWYER 209 (1995).

[2]Garrett R. Krueger, *Straight-time Overtime and Salary Basis: Reform of the Fair Labor Standards Act,* 70 WASH.L.REV. 1097, 1102-03 (1995).

indicated a certain status within a company, the regulations adopted the salary test as a rule-of-thumb for sorting out the kinds of employees that Congress intended the FLSA to protect from those it did not. We should not be surprised then to learn that the salary floor applies not just to administrative employees, but to executive and professional employees as well. 29 C.F.R. § 541.1, 541.3.

Plaintiffs are not the first exempted employees to try to convert a contract action for unpaid salary into an FLSA suit. And understandably so considerable advantages over a breach of contract claim would accrue if they succeeded. Piercing through insolvent corporations to reach the principals' presumably deep pockets is only the beginning. While the FLSA applies generally to modestly compensated workers, its punitive provisions can escalate the potential recovery to bigger money. Nicholson, for instance, seeks $45,000 on the FLSA claim, plus unpaid overtime; Smith, the smaller sum of $9,372.10, plus unpaid overtime.

We must agree with the reasoning of other courts that have defeated earlier efforts to transform contract actions into FLSA suits. Each of these courts has properly directed its analysis to what an employee was owed, not what he actually received. *Donovan v. Agnew,* 712 F.2d 1509, 1517 (1st Cir.1983); *Reich v. Midwest Body Corp.,* 843 F.Supp. 1249, 1250 (N.D.Ill.1994); *Kawatra v. Gardiner,* 765 S.W.2d 771, 773-76 (Tenn.Ct.App.1988). Support for this position comes first from the regulations themselves. The exemption for administrative employees refers to employees compensated "on a salary or fee basis." 29 C.F.R. § 541.2(e)(1)-

(2).  The definition of "a salary basis" underscores that it is the employment agreement that is determinative.  For an employee to be on a salary basis, it must be that "*under his employment agreement he regularly receives each pay period ... a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.*"  29 C.F.R. § 541.118 (emphasis added);  § 541.212 (applying definition to administrative employees).  But the regulations are not enough in themselves, for they are somewhat contradictory and opaque.  As Nicholson and Smith point out, an administrative employee is one who "is compensated"—a passive verb in the past tense that suggests an action completed, i.e., that the employee has actually been paid.

More decisive is Congressional intent.  By focusing on the employment agreement, we respect the protective stance toward poorer and powerless workers that Congress took in the FLSA.  President Franklin D. Roosevelt told Congress that the FLSA would " "[ ] extend the frontiers of social progress' by "insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.' "  *Phillips,* 324 U.S. at 493, 65 S.Ct. at 808.  In light of this goal, one way of illustrating the oddness of Nicholson's and Smith's interpretation is to show how far their logic would run.  Administrative employees are not alone in having a salary floor as part of their classification;  professional and executive employees do, too.   If the plaintiffs' argument prevailed, it would apply to all three classes.  Suppose that a company goes bankrupt and fails to pay its non-owner CEO her

salary. Under plaintiffs' logic, that CEO could sidestep a contract action and instead invoke the FLSA. By creating the employee exemptions, Congress declined to ground this kind of action in federal labor law. *Donovan,* 712 F.2d at 1517.

Nicholson and Smith cite a series of cases in which reductions in pay led courts to strip the administrative/executive employee defense from employers. *Avery v. City of Talladega,* 24 F.3d 1337 (11th Cir.1994); *Atlanta Professional Firefighters Union, Local 134 v. Atlanta,* 920 F.2d 800 (11th Cir.1991); *Harris v. District of Columbia,* 709 F.Supp. 238 (D.D.C.1989). These cases pertain to a particular situation not present here. As noted above, the regulations state that if an employee is being paid on a salary basis, the employer must not "subject [the salary] to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118. The three cases that plaintiffs cite involve employees alleging precisely this—that their employers have reduced their salaries because of how much or how well they worked. *Avery,* 24 F.3d at 1340-41; *Atlanta Professional Firefighters,* 920 F.2d at 805; *Harris,* 709 F.Supp. at 240, 242. Nicholson and Smith allege nothing of the sort.

Understandably frustrated by their inability to recover in contract, Nicholson and Smith would have us approve an end-run around Congressional intent. We cannot accede to their request.

III. Sundry issues: jury's special verdict and McCullar as an employer

Two issues remain for our consideration. First, we understand Nicholson to be challenging on appeal the jury verdict that he was an administrative employee. To overturn the jury, we

would have to find that insufficient evidence exists to support the jury's determination—drawing all reasonable inferences in favor of the defendants. *Grant v. Preferred Research, Inc.,* 885 F.2d 795, 798 (11th Cir.1989). We cannot so conclude. The jury was told, among other things, that Nicholson located suppliers for import/export trade involving the former Soviet Union, including Ukranian steel producers; that he searched for markets and middlemen in poor countries to sell recycled clothing and jeans there; and that Nicholson enjoyed a fair degree of autonomy and responsibility for complex tasks. Some evidence supports the jury's verdict. We end our inquiry there.

Second, because the jury concluded that Nicholson was an administrative employee, the district court never assessed the validity of another of McCullar's affirmative defenses: that McCullar was not an employer within the meaning of the FLSA. Plaintiffs have again failed on the threshold issue of whether they are administrative employees. This loss renders McCullar's affirmative defense moot.

The judgment of the district court is accordingly

AFFIRMED.