**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 10 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RICHARD ACKERMAN, TIMOTHY
BOOKER, ERICH BUTLER, MICHAEL
DICKSON, EDWARD DONAHOE,
MICHAEL FABIAN, STEVEN JONES,
MARK MARES, ROBERT MOON,
JAMES MUELLER, DANA ROE, KIM
SMITH, PAUL SPIELMAN, ALAN
TAMONDONG, AND BRAD
VELLIQUETTE,

      Plaintiffs - Appellees/Cross-
      Appellants,

v.

COCA-COLA ENTERPRISES, INC., a
Delaware Corporation in good standing
and licensed to do business in Colorado,

      Defendant-Appellant/Cross-
      Appellee.

Nos. 97-1079,
97-1102

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No.  93-OK-1633-TL)**

---

Walter V. Siebert, of Sherman and Howard, Denver, Colorado (Ronald G. Ingham and
Kelly L. Weston, of Miller and Martin, Chattanooga, Tennessee, with him on the briefs),
for the Defendant-Appellant/Cross-Appellee.

Daniel P. Powell, Alamosa, Colorado (Gary McPherson and Brandon P. Hull, Aurora,
Colorado, with him on the briefs), for the Plaintiffs-Appellees/Cross-Appellants.

Before **ANDERSON**, **EBEL**, and **HENRY**, Circuit Judges.

**HENRY**, Circuit Judge.

Coca-Cola Enterprises (Coca-Cola) appeals the district court's decision that advanced sales representatives and account managers employed by the company are entitled to overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219.[1] We conclude that these employees are exempt from the overtime compensation requirements of the FLSA because they are "outside salesmen," as that term is defined by Department of Labor regulations. We therefore reverse the decision of the district court and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

From 1991 to 1993, the plaintiffs were employed by Coca-Cola as advance sales representatives and account managers. Their primary responsibility was to sell Coca-Cola products to grocery stores, convenience stores, and mass merchandisers. During the period from 1991 to 1993, Coca-Cola also employed individuals known as "merchandisers." Although merchandisers did not sell Coca-Cola products, they

---

[1]     The Coca-Cola advance sales representatives and account managers have filed a cross-appeal in which they challenge several other rulings by the district court. In light of our conclusion regarding the outside salesman exemption, we address neither the issues raised in the cross-appeal nor the other issues raised in Coca-Cola's appeal.

performed a wide variety of tasks associated with the distribution and promotion of the company's products, including: restocking shelves, replacing damaged products, filling coolers, filling vending machines, delivering products and equipment, adjusting and cleaning display shelves, setting up displays, rotating products, hanging signs, cleaning the warehouse, cleaning coolers and shelves, restocking pallets, and transferring products from one store to another.

During the period at issue in this case, Coca-Cola employed two different methods of distribution. Prior to April 1, 1992, Coca-Cola used a hybrid system. For customers whose accounts exceeded four million dollars, the company employed advance sales representatives (including the plaintiffs) to sell the products before delivery. Following the sale, delivery drivers transported Coca-Cola products to the appropriate store. Coca-Cola's merchandisers then stocked the shelves and performed other merchandising tasks. For smaller accounts, Coca-Cola distributed its products through route sales drivers. These drivers visited stores, sold the product, stocked the shelves, displayed advertisements, and performed all the other required merchandising.

In April 1992, Coca-Cola changed its distribution system such that individuals known as account managers (including the plaintiffs) sold products for both large and small accounts prior to delivery. Under this "presale" system, the account managers visited large grocery stores, convenience stores, and mass merchandisers, sold Coca-Cola products, and performed various merchandising tasks. For the larger grocery store and

mass merchandiser accounts, Coca-Cola assigned merchandisers to perform various merchandising tasks. Coca-Cola did not assign merchandisers to the smaller accounts, and, at these locations, the account managers performed the necessary merchandising tasks themselves. The account managers frequently performed these tasks at the larger accounts as well.

In their work as advance sales representatives and account managers, the plaintiffs typically arrived at Coca Cola's offices at about 5:00 a.m. After attending a sales meeting, they gathered advertising materials from a storeroom and loaded them into station wagons supplied by the company. They then visited ten to fifteen grocery stores, fifteen to twenty convenience stores, and a few mass merchandisers. At the grocery stores and mass merchandisers, they inspected product displays and advertising and then determined the amount of available inventory. At certain stores, the plaintiffs also set up advertising materials. After performing these tasks, they spoke to store managers about subsequent deliveries, obtaining approval for Coca-Cola to ship additional products. Delivery drivers then transported the Coca-Cola products to stores, and the merchandisers performed various tasks associated with displaying and promoting the products.

From 1991 until 1993, the plaintiffs regularly worked more than forty hours a week as advance sales representatives and account managers. Their hours ranged from an average low of fifty-five hours per week to an average high of seventy-two hours per week. Coca-Cola paid them a salary, bonuses, and commissions. Because Coca-Cola

4

considered them to be exempt from the requirements of the FLSA, the plaintiffs did not receive overtime compensation. In contrast, Coca-Cola viewed delivery drivers and merchandisers as subject to the FLSA and paid them overtime.

The plaintiffs filed this action in July 1993, alleging that Coca-Cola had violated the FLSA by failing to pay them overtime compensation. Coca-Cola responded that the FLSA's overtime compensation requirements were not applicable to the plaintiffs because of the statutory exemptions governing outside salesmen and motor carriers and because of the exemption governing positions consisting of a combination of two or more exempt jobs.

After a bench trial, the district court issued a memorandum opinion rejecting Coca-Cola's arguments under each of the claimed exemptions and concluding that the plaintiffs were entitled to overtime compensation under the FLSA. The court also rejected Coca-Cola's argument that the plaintiffs' damages should be calculated on the basis of the "fluctuating work week method," under which a successful plaintiff receives overtime compensation at only half his or her regular rate (instead of the usual one-and-a-half times his or her regular rate). See 29 C.F.R. § 778.114 (discussing the fluctuating work week method). Finally, the court rejected the plaintiffs' argument that they were entitled to liquidated damages, reasoning that Coca-Cola had demonstrated that it acted in good faith and had reasonable grounds for believing that its actions did not violate the FLSA.

## II. DISCUSSION

Congress enacted the FLSA, 29 U.S.C. § 201-219, in order to improve "labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). In furtherance of this aim, the FLSA established a minimum wage, required overtime pay in certain instances, and prohibited child labor. See 29 U.S.C. §§ 206, 207, 212.

In spite of these broad remedial aims, Congress concluded that not all workers required the same kind of protection. It exempted from the FLSA's requirements "any employee employed in a bonafide executive, administrative, or professional capacity . . . , or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor]. . . .)" 29 U.S.C. § 213(a)(1).

Exercising that delegated authority, the Secretary has promulgated a series of regulations that define these exemptions. 29 C.F.R. § 541.500 defines the term "outside salesman" as:

> any employee:
>
> (a) who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:
>> (1) making sales within the meaning of section 3(k) of the Act; or
>> (2) Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
>
> (b) Whose hours of work of a nature other than that described

6

in paragraph (a)(1) or (2) of this section do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer: *Provided*, That work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.

(emphasis added).

In the district court proceedings, Coca-Cola contended that the plaintiffs were "outside salesmen" under the definition set forth in § 541.500. The company focused on the proviso of subsection (b), arguing that although the plaintiffs performed some merchandising tasks, those tasks were "incidental to and in conjunction with" their sales of Coca-Cola products. Significantly, in the district court proceedings, there was no dispute as to either subsection (a) of § 541.500 or the first part of subsection (b). The parties agreed that the plaintiffs were employed for the purpose of selling Coca-Cola's products and that they were regularly and customarily engaged in that activity away from Coca-Cola's offices. See 29 C.F.R. § 541.500. They also agreed that the time that the plaintiffs spent performing work of a nonexempt nature (i.e. merchandising) exceeded twenty percent of the hours worked by nonexempt workers (i.e. merchandisers). Thus, the district court's determination of whether the plaintiffs were outside salesmen depended entirely upon the question raised by § 541.500(b)'s proviso–whether the plaintiffs' merchandising tasks were "incidental to and in conjunction with" their sales of Coca-Cola products.

7

In its memorandum opinion, the district court concluded that Coca-Cola had failed to establish that the plaintiffs' merchandising activities were "incidental to and in conjunction with" their own sales. The court cited testimony "that merchandising was primarily done because customers expected it to be done and that merchandising increased the sale of Coca-Cola products in general." Aplt's App. at 16-17. Additionally, the court noted that merchandising activities occupied anywhere from twelve to forty-one hours of the plaintiffs' time each week. Id. at 17 n.5. Noting that "incidental" means "occurring or apt to occur as an unpredictable or minor concomitant" or "of a minor, casual, or subordinate nature," see id. (quoting Webster's II New Riverside University Dictionary 618 (1984)), the court said that "[a]n activity that consumes anywhere from 20 to 65 percent of an employee's workday cannot be said to be a minor occurrence." Id. It therefore concluded that the plaintiffs were not outside salesmen under the FLSA.

On appeal, Coca-Cola argues that the district court erred in applying the phrase "incidental to and in conjunction with" in the proviso of 29 C.F.R. § 541.500(b). Under the Department of Labor's regulations, Coca-Cola maintains, the merchandising work performed by the plaintiffs, though often time-consuming, was still incidental to and in conjunction with their own sales of Coca-Cola products; as a result, the plaintiffs' merchandising responsibilities do not defeat the outside salesman exemption.

In response, the plaintiffs maintain that Coca-Cola's reading of the outside salesman exemption conflicts with the policies underlying the FLSA. The plaintiffs

8

observe that, under Coca-Cola's reading of the applicable regulations, merchandising work could be exempt from the FLSA when performed by outside salesmen but governed by the FLSA when performed by merchandisers. Such an interpretation, the plaintiffs contend, allows Coca-Cola to avoid the overtime compensation requirements of the FLSA entirely by exploiting the distinction between merchandisers and account managers. They observe that under Coca-Cola's reading of the regulations, the company would be permitted to employ non-exempt merchandisers for only forty hours a week while requiring account managers (who are exempt as outside salesmen under Coca-Cola's interpretation of the FLSA) to work more than forty hours a week in order to complete the merchandising work left undone by the merchandisers.

In light of the parties' arguments, the question before us is the same one presented to the district court: whether the plaintiffs' merchandising activities were "incidental to and in conjunction with" their sales of Coca-Cola products such that the plaintiffs were covered by the FLSA exemption for outside salesmen. We review the district court's resolution of this legal question de novo, see Sanders v. Elephant Butte Irrigation District, 112 F.3d 468, 470 (10th Cir. 1997), but we examine the underlying factual determinations for clear error. Id. Additionally, in light of the FLSA's broad remedial aims, exemptions must be narrowly construed. Carpenter v. City & County of Denver, Colo., 82 F.3d 353, 355 (10th Cir. 1996) (citing Mitchell v. Lublin, McGaughy, & Assocs., 358 U.S. 207, 211 (1959)). As the employer, Coca-Cola bears the burden of proving that particular

9

employees fit "'plainly and unmistakenly within [the exemption's] terms.'" <u>Reich v. Wyoming</u>, 993 F.2d 739, 741 (10th Cir. 1993) (quoting <u>Arnold v. Ben Kanowsky, Inc.</u>, 361 U.S. 388, 392 (1960)).  However, "the [Department of Labor] regulations are entitled to judicial deference and are the primary source of guidance for determining the scope of exemptions to the FLSA."  <u>Spradling v. City of Tulsa</u>, 95 F.3d 1492, 1495 (10th Cir. 1996) (citation omitted).

### A.  Department of Labor Regulations Regarding Outside Salesmen

As Coca-Cola suggests, the Department of Labor's regulations provide guidance in determining what tasks may be considered "incidental to and in conjunction with" the plaintiffs' sales of Coca-Cola products.  Section 541.503 uses that phrase in the following manner:

> Work performed "incidental to and in conjunction with the employee's own outside sales or solicitation" includes not only incidental deliveries and collections . . . , but also <u>any other work performed by the employee in furthering his own sales efforts.</u>  Work performed incidental to and in conjunction with the employee's own outside sales or solicitations would include, among other things, the writing of his sales reports, the revision of his own catalog, the planning of his itinerary and attendance at sales conferences.

29 C.F.R. § 541.503 (emphasis added).

The subsequent regulations describe in more detail the kinds of activities that are viewed as "in conjunction with and incidental to" outside sales.  <u>See</u> 29 C.F.R. §§

10

541.504–541.505. These regulations address promotional work and the work of "driver salesmen," who deliver products and make sales. In both instances, a key inquiry is whether the employee in question actually consummates the sale of his or her employer's products at a particular location. If that employee consummates the sale but also performs a variety of other tasks intended to promote the company's products but not directly involving sales, those tasks may still be considered "incidental to and in conjunction with" those sales. On the other hand, if the employee in question does not actually consummate the sale at the location in question, then his other activities, even if closely related to sales, are not "incidental to and in conjunction with" those sales under the regulations.

For example, the Department of Labor's regulation regarding promotional work gives the illustration of a manufacturer's representative who visits retailers accompanied by a salesman for a distributor (or "jobber"). If the manufacturer's representative does preliminary work ("which may include arranging the stock, putting up a display or poster, and talking to the retailer for the purpose of getting him to place the order for the product"), but the distributor's salesman actually takes the order after the preliminary work is done, then such work is not incidental to sales made by the manufacturer's representative and is not exempt. See 29 C.F.R. § 541.505(c)(2). The same regulation gives an example of a nonexempt company representative who visits stores in order to perform promotional work but does not complete the sale of his company's products:

11

[A]nother type of situation involves the company representative who visits chainstores, arranges the merchandise on shelves, replenishes stock by replacing old with new merchandise, consults with the manager as to the requirements of the store, fills out a requisition for the quantity wanted and leaves it with the store manager to be transmitted to the central warehouse of the chainstore company which later ships the quantity requested. The arrangement of merchandise on the shelves or the replenishing of stock is not exempt work unless it is incidental to and in conjunction with the employee's own outside sales. Since the manufacturer's representative in this instance does not consummate the sale nor direct his efforts toward the consummation of a sale (the store manager often has no authority to buy) this work must be counted as non-exempt.

29 C.F.R. § 541.504 (c)(4) (emphasis added).

The regulation regarding driver salesmen, 29 C.F.R. § 541.505, adopts a similar approach. It contrasts a route driver who does not make sales at the locations he visits (and is therefore not covered by the exemption for outside salesmen) with a route driver who takes orders or obtains commitments for the products he delivers (and is therefore covered by the exemption):

[A] route driver primarily engaged in making deliveries to his employer's customers and performing activities intended to promote sales by customers, including placing point-of-sale and other advertising materials, price stamping commodities, arranging merchandise on shelves or in coolers or cabinets, rotating stock according to date, and cleaning and otherwise servicing display cases is not employed in the capacity of outside salesman by reason of such work. Such work is nonexempt work for purposes of this part unless it is performed as an incident to or in conjunction with sales actually made by the driver to such customers. If the driver who performs such functions actually takes orders or obtains

12

> commitments from such customers for the products he delivers, and the performance of the promotion work is in furtherance of his own sales efforts, his activities for that purpose in the customer's establishment would be exempt work.

29 C.F.R. § 541.505(d) (emphasis added).

Courts considering the outside salesman exemption have applied this distinction between employees who consummate sales at out-of-the-office locations and those employees who do not consummate sales there. For example, in Skipper v. Superior Dairies, Inc., 512 F.2d 409, 416 (5th Cir. 1975), the Fifth Circuit reversed a district court's ruling that a dairy product distributor's routeman was covered by the outside salesman exemption, reasoning that the routeman's responsibility was to deliver products in prearranged amounts. The court cited testimony from the district court proceedings indicating that the sale of the dairy products was made not by the routeman but by other individuals in the company. See id. at 414-415. In an earlier case, the Sixth Circuit reached a similar conclusion, holding that a soft drink bottler's routeman was not covered by the outside salesman exemption because the routeman did not solicit orders and because the managers of the stores that he visited lacked the authority to enter into binding sales agreements with the routeman. See Hodgson v. Klages Coal & Ice Co., 435 F.2d 377, 383 (6th Cir. 1970). In contrast, other courts have concluded that driver-salesmen who make sales of their employers' products at the locations they visit are covered by the outside salesman exemption. See, e.g., Hodgson v. Krispy Kreme

13

Doughnut Co., 346 F. Supp. 1102, 1107 (M.D.N.C. 1972).


### B.  The Outside Salesman Exemption in this Case

In the case before us, the record indicates that, as advance sales representatives and account managers, the plaintiffs consummated the sales of Coca-Cola products at the stores that they visited.  In this regard, we note that the parties have not challenged the district court's conclusion that the plaintiffs were employed for the purpose of selling Coca-Cola products and were regularly engaged in that activity.  The parties also have not challenged the district court's description of Coca-Cola's distribution systems and of the plaintiffs' sales responsibilities under those systems.  Moreover, in testimony at trial, several of the plaintiffs described their taking of orders for company products from store managers.  See Aplt's App. at 85, 152.  There is no evidence in the record that sales of Coca-Cola products at stores visited by the plaintiffs were made by any other Coca-Cola employees, and neither in the district court proceedings nor in this appeal have the plaintiffs disputed the proposition that it was through their own transactions with personnel from stores carrying Coca-Cola products that sales were accomplished.  The plaintiffs thus resemble the exempt "driver salesman" identified in 29 C.F.R. § 541.505(d), an employee who "actually takes orders or obtains commitments from . . . customers."  In light of their authority to effect sales at the stores they visited,  plaintiffs may be contrasted with the nonexempt manufacturer's representative discussed in 29

C.F.R. § 541.504 (c)(4)–the one who "does not consummate the sale nor direct his efforts toward the consummation of a sale."

Because the plaintiffs consummated sales of Coca-Cola products at the stores they visited, the work that they performed in promoting those sales is "incidental to and in conjunction with" those sales under the Department of Labor's regulations. See 29 C.F.R. § 541.504 (a) (stating that "any promotional work which is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations is clearly exempt work. On the other hand, promotional work which is incidental to sales made, or to be made, by someone else cannot be considered as exempt work."); 29 C.F.R. § 541.505(d) (stating that promotion work and delivery work are exempt if incidental to and in conjunction with the employee's own sales or efforts to sell). Here, the plaintiffs have not disputed Coca-Cola's contention that their various merchandising tasks promoted sales of Coca-Cola products at the stores they visited. Instead, they argue only that because merchandising work is considered non-exempt if performed by merchandisers, it should also be considered non-exempt when performed by outside salesmen. See Aplee's Br. at 14-17. This argument misconstrues the Department of Labor regulations, which provide that promotional work performed by employees who consummate sales may be covered by the outside salesman exemption even if the same work would not be exempt if performed by other employees. See, e.g., 29 C.F.R § 541.504(b)(2) (noting that "[i]ncidental promotional activities may be tested by whether

they are 'performed incidental to an in conjunction with the employee's own outside sales or solicitations' or whether they are incidental to sales which will be made by someone else."). Therefore, we conclude that the plaintiffs' merchandising work was "incidental to and in conjunction with" their outside sales of Coca-Cola products under the proviso of § 541.500(b). As a result, in spite of their merchandising work, the plaintiffs are covered by the outside salesman exemption.

In reaching the contrary conclusion, the district court relied on testimony that "merchandising was primarily done because the customers expected it to be done and that merchandising increased the sales of Coca-Cola products in general." Aplt's App. at 16-17. Although we do not dispute the district court's characterization of this testimony, we note that neither the fact that the plaintiffs were motivated by a desire to please customers nor the fact that merchandising increased sales of products at other locations is determinative of what activities are "incidental to and in conjunction with" outside sales under the Department of Labor regulations. Instead, what matters is whether the plaintiffs--or someone else--sold Coca-Cola products at the locations where the plaintiffs performed merchandising activities and whether, if the plaintiffs sold Coca-Cola products at those locations, their merchandising work promoted those sales.

The district court also relied on the quantity of merchandising work performed by the plaintiffs in certain weeks, reasoning that an activity that consumes anywhere from twenty to sixty-five percent of an employee's work week cannot be characterized as

incidental.  Id. at 17.  Although the district court's reasoning is persuasive under the dictionary definition of "incidental" on which it relied, that dictionary definition is not applicable here.  Instead, we must apply the phrase as used in the applicable regulations, which use the phrase "incidental to and in conjunction with" in a manner not directly correlated to the amount of time expended.   See 29 C.F.R. § 541.505 (a) (stating that "[a] determination of an employee's chief duty or primary function must be made in terms of the basic character of the job as a whole" and that "the time devoted to the various duties is an important, but not necessarily controlling, element").

We agree with the plaintiffs that, as the Department of Labor regulations are written and as Coca-Cola has interpreted them, the company may be allowed to avoid paying overtime in certain instances by assigning merchandising tasks to account managers rather than to merchandisers.  Although such an assignment may be inequitable and subject to challenge on other grounds, the evidence in this case does not establish a violation of the FLSA under the current Department of Labor regulations.  Because Congress has delegated the authority to define the FLSA exemptions to the Department of Labor, and because the plaintiffs have not here challenged those regulations as arbitrary, capricious, or manifestly contrary to the statute, see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984), our task here is to apply the exemptions as defined in the regulations.

## III.  CONCLUSION

We therefore conclude that the plaintiffs are exempt from the FLSA as outside salesmen.  The district court's decision is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.