[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 27, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-10737

_____

D. C. Docket No. 06-01746-CV-ORL-18GJK

NELDA L. GREGORY,

Plaintiff-Appellant,

versus

FIRST TITLE OF AMERICA, INC.,
a Florida corporation,
BRUCE NAPOLITANO,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 27, 2009)**

Before BIRCH and BARKETT, Circuit Judges, and KORMAN,* District Judge.

_____

* Honorable Edward Korman, United States District Judge for the Eastern District of
New York, sitting by designation.

PER CURIAM:

Appellant Nelda Gregory ("Gregory") appeals from an order entered on 14 January 2008 by the Middle District of Florida granting First Title of America, Inc. and Bruce Napolitano's (collectively, "Appellees") motion for summary judgment. The district court determined that Gregory met the requirements of the Fair Labor Standards Act's ("FLSA") outside salesman exemption and so was not entitled to overtime compensation. We agree and AFFIRM.

## I. BACKGROUND

Bruce Napolitano ("Napolitano") is the owner of First Title of America, Inc. ("First Title"), a title marketing company based in Lake Mary, Florida.[1] Gregory was an employee of Appellees from July 2004 through January 2005. Gregory was hired by the Appellees as a "marketing executive" due, in large part, to her prior experience in selling title insurance. According to the Employment Agreement ("the Agreement") executed between the parties, her job description was to "provide the services for referring and closing title insurance companies." Under the terms of the Agreement, Gregory initially was paid $1000 per week. At Gregory's suggestion, she later began to be paid on a commission basis and received a fifty percent commission on all orders for title insurance from her

---

[1] First Title does business as "All Florida Title." First Title also employs Napolitano's wife, Nicolle Napolitano, and his mother, Janet Napolitano.

2

clients that closed with First Title.  Gregory claimed that although she often

worked more than forty hours per week, she was never compensated for her

overtime.[2]

## II.  DISCUSSION

We review de novo an order granting summary judgment.  Drago v. Jenne,

453 F.3d 1301, 1305 (11th Cir. 2006).  In doing so, we view "the evidence and all

reasonable inferences drawn from it in the light most favorable to the nonmoving

party."  Battle v. Board of Regents, 468 F.3d 755, 759 (11th Cir. 2006) (per

curiam).  We will affirm the summary judgment only if no genuine issue of

material fact exists and the moving party is entitled to judgment as a matter of law.

Federal Rule of Civil Procedure 56(c).

A.  FLSA and the Outside Salesman Exemption

The FLSA provides, in pertinent part:

> Except as otherwise provided in this section, no employer shall
> employ any of his employees who in any workweek is engaged in
> commerce or in the production of goods for commerce, or is
> employed in an enterprise engaged in commerce or in the production
> of goods for commerce, for a workweek longer than forty hours unless
> such employee receives compensation for his employment in excess

---

[2] Gregory claimed that she worked ten hours of overtime per week during her tenure with First Title (for a total overtime claim of $10,000).  She also claimed an additional $280,000 – $8000 per month for the three-year duration of her employment as specified in the Agreement for orders still coming into First Title from her clients after her employment with First Title ended.

3

of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The FLSA includes several exemptions from its minimum wage and overtime requirements. One of those exemptions is contained in § 213(a)(1) of the statute and exempts any employee employed in the capacity of an outside salesperson, as defined by the Secretary of Labor. See 29 U.S.C. § 213(a)(1).

The regulations applicable to outside sales employees are found in 29 C.F.R. Part 541. Regulations such as these, promulgated pursuant to an express delegation of legislative authority, are to be given controlling weight unless found to be arbitrary, capricious, or contrary to the statute. See Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 843-44, 104 S. Ct. 2778, 2781-82 (1984). Agency opinion letters "do not warrant Chevron-style deference." Christensen v. Harris County, 529 U.S. 576, 587, 120 S. Ct. 1655, 1662 (2000). They are, however, "entitled to respect under . . . Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S. Ct. 161 (1944), but only to the extent that those interpretations have the power to persuade." Id., 120 S. Ct. at 1663 (quotation marks omitted). It is well established that the employer "bears the burden of proving the applicability of a FLSA exception by clear and affirmative evidence. Klinedinst v. Swift Invs., Inc., 260 F.3d 1251, 1254 (11th Cir. 2001) (quotation marks omitted). We have held that a

4

FLSA exemption must be narrowly construed so that it applies to those plainly within its terms and spirit. Nicholson v. World Bus. Network, Inc., 105 F.3d 1361, 1364 (11th Cir. 1997).

> The term "outside sales employee" is defined as any employee:
>
> (1) Whose primary duty[3] is:
> > (i)  making sales within the meaning of section 3(k) of the Act, or
> > (ii)  obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
>
> (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a). "Primary duty" is further defined in 29 C.F.R. § 541.700:

> To qualify for exemption . . . , an employee's 'primary duty' must be the performance of exempt work. The term 'primary duty' means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and

---

[3] "In determining the primary duty of an outside sales employee, work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences." 29 C.F.R. § 541.500(b).

5

the wages paid to other employees for the kind of nonexempt work performed by the employee.

The regulatory scheme governing outside sales employees provides additional guidance concerning the meaning of "making sales or obtaining orders" and "promotional work." 29 C.F.R. § 541.501 defines "making sales or obtaining orders" as follows:

> (b) Sales within the meaning of section 3(k) of the Act include the transfer of title to tangible property, and in certain cases, of tangible and valuable evidences of intangible property. Section 3(k) of the Act states that 'sale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition.
>
> (c) Exempt outside sales work includes not only the sales of commodities, but also 'obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer.' Obtaining orders for 'the use of facilities' includes the selling of time on radio or television, the solicitation of advertising for newspapers and other periodicals, and the solicitation of freight for railroads and other transportation agencies.
>
> (d) The word 'services' extends the outside sales exemption to employees who sell or take orders for a service, which may be performed for the customer by someone other than the person taking the order.

Promotional work is covered by 29 C.F.R. § 541.503. Promotional work may or may not be exempt outside sales work, depending on the circumstances under which it is performed. "Promotional work that is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt

6

work" whereas "promotional work that is incidental to sales made, or to be made, by someone else is not exempt outside sales work." 29 C.F.R. § 541.503(a).

Finally, when assessing the status of any given employee, Department of Labor ("DOL") regulations also provide that "[a] job title alone is insufficient to establish the exempt status of an employee . . . [but rather] [t]he exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part." 29 C.F.R. § 541.2.

B. Analysis

1. Gregory's Argument

Gregory argues that she does not fall within the FLSA's outside sales exemption because she was employed by First Title as a marketing representative and she never actually consummated a sale with any person or business during the period of her employment. R40-2 at 2; R40-4 at 1. Gregory contends that she was tasked only with inducing realtors, brokers and lenders to begin referring their customers – the end user – on to First Title for title insurance services. She maintains that she never directly sold title insurance or title insurance services to anyone because she was not licensed to do so. Gregory asserts that she was employed only to promote First Title's services and to stimulate sales and was

7

never involved in the actual sale of title insurance to either the realtors, brokers and lenders or to the end users.[4]  R43-3 at 24.

Gregory relies on the following sources in support of her argument: (1) the "promotional work" language in 29 C.F.R. § 541.503; (2) a 1999 DOL Opinion Letter; (3) an extract from the DOL Field Operations Handbook; and (4) Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459 (S.D.N.Y. 2008).  We have previously touched on the "promotional work" language as set out in 29 C.F.R. § 541.503.  Gregory underscores § 541.503(b), which provides, in part, that "[p]romotion activities directed toward consummation of the employee's own sales are exempt . . . [but] [p]romotional activities designed to stimulate sales that will be made by someone else are not exempt outside sales work."  Gregory contends that this language supports her position that she only stimulated sales that were ultimately carried out by others.

In a 1999 Opinion Letter, the DOL expressed its view that college recruitment counselors were not exempt outside salespersons because they were "not engaged in making sales of the college's services, or obtaining contracts for its services."  Opinion Letter from DOL, Wage and Hour Div. (Apr. 20, 1999),

---

[4] Gregory highlights the fact that the end user of the title insurance has the right to change title insurance companies and shop elsewhere at any given moment.

1999 WL 1002391. Rather, their work was akin to sales promotion work because they were "engaged in identifying qualified customers, i.e., students, and inducing their application to the college, which in turn decides whether to make a contractual offer of its educational services to the applicant." Id. Gregory posits that she is similarly situated with the recruiters described in the DOL Opinion Letter because she never interacted with the end-user but only induced or stimulated the sale of First Title's title insurance services.

Gregory also points to an extract from the DOL Field Operations Handbook ("the Handbook") for support. The Handbook provides that "[a]n employee whose duty is to convince a dealer of the value of his employer's service to the dealer's customers and who does not in fact obtain firm orders or contracts from either the dealer or his customers is not making sales within the meaning of the FLSA Sec. 3(k) . . . [and] is not exempt under Reg. 541.5, since he does not obtain orders or contracts from either the customers or the [dealer].". DOL Field Operations Handbook, Ch. 22, §22e04. Again, Gregory contends that she is much like the employee in the scenario sketched above and so is not exempt under § 541.5.

Finally, in her reply brief, Gregory cites Amendola as a case factually similiar to that before us in which pharmaceutical representatives ("PRs") were found not to fall within the outside salesperson exemption. In Amendola, the PRs

9

were required to be in the field all day with the goal of influencing the prescription practices of medical providers. Amendola, 558 F. Supp. 2d. at 463. The court held that

> "[i]nfluencing physicians to prescribe BMS drugs to patients or even obtaining non-binding 'commitments' from physicians to do so does not constitute a 'sale, exchange, contract to sell, consignment for sale, [or] shipment for sale' as these terms from 29 U.S.C. § 203k are customarily understood . . . [and] [t]he catch-all phrase 'or other disposition,' which completes the statutory definition of the terms 'sale' and 'sell,' . . . does not expand the definition to encompass promotional work by PRs.

Id. at 470-71. Gregory argues that her job, like the PRs in Amendola, was to do nothing more than influence the realtors, brokers and lenders to offer First Title's services as an option to their customers – i.e., to promote First Title's business.

2. Appellees' Argument

The Appellees contend that Gregory's own testimony clearly established her "primary duty" and placed her squarely within the FLSA's outside salesperson exemption. The Appellees also point to language in the DOL preamble to 29 C.F.R. Part 541, Ackerman v. Coca-Cola Enters., Inc., 179 F.3d 1260 (10th Cir. 1999), Stevens v. SimplexGrinnell, LLP, 190 Fed. Appx. 768 (11th Cir. 2006) (per curiam), and Nielsen v. DeVry, Inc., 302 F. Supp. 2d 747 (W.D. Mich. 2003) for support.

10

Gregory made the following statements in her deposition:

Q: And you obtained orders for title services?

A: Yes.

Q: Did you have – so to the extent you promoted the business, it was with the goal of obtaining orders for title services, correct?

A: Yes.

Q: And pursuant to the employment agreement, that was how you were to be paid, correct? On the basis of the title orders you obtained that then closed?

A: A commission, yes.

R40-2 at 24-25. Appellees argue that Gregory's deposition clearly establishes her primary duty as bringing in or obtaining orders for First Title and that her compensation was tied directly to orders for title services that ultimately closed.

The Appellees also cite language from the Preamble to 29 C.F.R. Part 541 discussing recent modifications to § 541.403 (Promotion Work). The DOL remarked that:

[T]he Department agrees that technological changes in how orders are taken and processed should not preclude the exemption for employees who in some sense make the sales. Employees have a primary duty of making sales if they 'obtain a commitment to buy' from the customer and are credited with the sale. See 1949 Weiss Report at 83 ('In borderline cases the test is whether the person is actually engaged in activities directed toward the consummation of his own sales, at least to the extent of obtaining a commitment to buy from the person to whom he is selling. If his efforts are directed toward stimulating the sales of his company generally rather than the consummation of his own specific sales his activities are not exempt'). . . . Exempt status should not depend on whether it is the sales employee or the customer

who types the order into a computer system and hits the return button. The changes to proposed section 541.503(c) are intended to avoid such a result.

69 Fed. Reg. 22122, 22162-63 (Apr. 23, 2004). The Appellees posit that how the order is placed is immaterial – the inquiry should focus on the efforts of the salesperson. If those efforts were directed toward the consummation of her own sales as opposed to stimulating the sales of the company in general, then the employee is exempt.

The Appellees cite <u>Ackerman</u> for the proposition that promotional work that is performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work. In <u>Ackerman</u>, the Tenth Circuit reversed a decision finding that advance sales representatives and account managers were not exempt outside sales employees. Although the employees engaged in substantial promotional activity such as restocking store shelves and setting up product displays, the Tenth Circuit determined that those activities were incidental to and in conjunction with sales accomplished through the employees' transactions with store personnel. <u>Ackerman</u>, 179 F.3d at 1266.

Next, the Appellees urge us to consider <u>Nielsen</u>, which catalogues those factors that comprise the primary duty test. According to the <u>Nielsen</u> court, factors to be considered are whether the employee must solicit new business; receives

12

specialized sales training; was hired and denominated as a sales person; is compensated on a commission basis; and lacks direct or constant supervision. Nielsen, 302 F. Supp. 2d at 756-57. The Appellees maintain that any principled application of these Nielsen factors would necessarily result in a determination that Gregory was an exempt outside salesperson.

Finally, Appellees cite persuasive authority from our own circuit. In Stevens, we affirmed a summary judgment determination that the plaintiff was an exempt outside salesperson. The plaintiff was a salaried Preventive Maintenance Agreement ("PMA") sales representative who provided service to existing PMA customers and received an eight percent commission on PMAs that she sold, upgraded, or renewed. Stevens, 190 Fed. Appx. at 769-70. We found that she was an exempt outside salesperson because "[a]lthough she also provided service to existing customers, this duty was 'incidental to and in conjunction with the employee's own outside sales' because the service that Stevens provided to these customers furthered her ability to make sales that increased her commission." Id. at 772.

After laying out the case law in support of their position, the Appellees attempt to distinguish a case analogous to the 1999 DOL Opinion Letter in which the Tenth Circuit ruled that an employee of a party contracting with the military to

13

recruit soldiers was not exempt under the outside sales provisions of the FLSA. Clements v. Serco, Inc., 530 F.3d 1224 (10th Cir. 2008).[5] The Clements court, likening the factual situation to that addressed by the DOL in its 1999 Opinion Letter (dealing with college recruiters), concluded that because the employee did not, and could not, actually enlist the recruits, they were not engaged in sales. Id. at 1228-29.

The Appellees distinguish Clements and the DOL Opinion Letter by noting that the recruitment process in both Clements and as described in the DOL Letter required some form of intervention between the identification of a qualified candidate and the actual sale. In Clements, the employee could not enlist the recruit and so could not, by law, consummate the sale. The military "intervened" between the employee's identification of a potential recruit and the actual enlistment of that recruit.[6] Likewise, in the college recruiter scenario described in the DOL Opinion Letter, the college "intervened" between the recruiter and the

[5] Clements worked for Serco, a private company that contracted with the United States military to recruit soldiers. Clements sued Serco for overtime compensation under the FLSA. Serco claimed that Clements was exempt under the outside sales provision of the FLSA. See id. at 1225.

[6] Serco employees could only send potential recruits to a Military Entrance Processing Station ("MEPS"), owned by the government, where the recruits were required to spend an entire day with military personnel undergoing final eligibility testing and meeting with military counselors to discuss available jobs. Only after that could a recruit enlist, and only with military personnel. Id. at 1226.

14

consummation of the sale. The college recruiter's work was akin to "sales promotion work" because she was "engaged in identifying qualified customers, i.e., students, and inducing their application to the college, which in turn decides whether to make a contractual offer of its educational services to the applicant." Opinion Letter from Dept. of Labor, Wage and Hour Div. (Apr. 20, 1999), 1999 WL 1002391. The Appellees argue that in this case there was no intervention in the sales process. Once Gregory obtained an order, no other actor stepped in to consummate the sale. The order was sent by the lender, broker or dealer to First Title and processed. If the deal closed and First Title provided the title insurance as ordered, Gregory received a commission on that order.

Separate and apart from the outside salesman exemption issue, the Appellees argue that they are entitled to summary judgment because Gregory cannot reference any facts in the record in support of her claim for overtime compensation. In addition, the Appellees contend that they did not know, nor could they have known, how many hours Gregory actually worked, given her time away from the office and the unsupervised nature of her work. They characterize Gregory's testimony regarding her work hours as contradictory and less than concrete. The district court did not entertain this argument in its order.

15

3.  Decision

As a preliminary matter, a few issues can be addressed and put aside straight away.  First, the parties concede that the second prong of § 541.500's general rule for outside sales employees is not at issue in this case (i.e., Gregory agrees that she was "customarily and regularly engaged away from [her] employer's place or places of business in performing [her] primary duty."  29 C.F.R. § 541.500(a)(2); Appellant's Initial Brief at 12.  Second, in accordance with § 541.2, a job title alone is insufficient to establish the exempt status of an employee.  Gregory's job description as "Marketing Director" is but one of many factors to be considered but is certainly not dispositive on the issue of her status.  Third, as previously discussed, "[t]he word 'services' extends the outside sales exemption to employees who sell or take orders for a service, which may be performed for the customer by someone other than the person taking the order."  29 C.F.R. § 541.501(d).  Accordingly, if we determine that Gregory sold or took orders for title insurance services, which were performed for the customer by First Title, then she would be within the ambit of the outside sales exemption.

The task before us effectively requires us to navigate a course between a rock and a hard place.[7]  When dealing with the FLSA's exemptions, the Supreme

_____

[7] Or Scylla and Charybdis, for students of the classics.

16

Court has reminded us that we are to narrowly construe any such exemption, "giving due regard to the plain meaning of the statutory language and the intent of Congress." A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S. Ct. 807, 808 (1945). But as we have said before, "we are also heedful of the rationale for interpreting the FLSA in this way: 'To extend an exemption to other than those plainly and unmistakably *within its terms and spirit* is to abuse the interpretative process and to frustrate the announced will of the people.'" Nicholson, 105 F.3d at 1364 (citation omitted). That being said, we recognize that "[t]o read the FLSA blindly, without appreciation for the social goals Congress sought, would also do violence to the FLSA's spirit." Id. So in the end, we are commanded to narrowly construe the exemption without diminishing the spirit of its parent legislation.

We first consider what motivated Congress to pass the FLSA in the first place. "The Fair Labor Standards Act was designed to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work." A.H. Phillips, Inc., 324 U.S. at 493, 65 S. Ct. at 808 (quotation marks and citation omitted). "When Congress passed the FLSA . . ., it sought to end the presence in American commerce of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." Nicholson, 105 F.3d at

17

1363. We have noted, however, that "[t]he goal of ameliorating the uglier side of a modern economy did not imply that all workers were equally needful of protection ... [and] [s]o Congress removed any employee employed in a bona fide executive, administrative, or professional capacity . . . or in the capacity of outside salesman from the FLSA's strictures." Id. (quotation marks and citation omitted). Keeping the animating spirit behind the FLSA firmly in mind, we next apply the primary duty test as required by 29 C.F.R. §§ 541.500 and 541.700.

The primary duty test compels us to consider a number of factors when determining the primary duty of an employee, including, but not limited to, "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing the exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a). Applying these factors to the case before us, we conclude that Gregory's primary duty was to obtain orders for First Title's title insurance services, i.e., bring in orders. The bulk of Gregory's time was spent away from the office, free from direct supervision and performing work that could not be conclusively characterized as nonexempt. Although Gregory urges us to construe her work as "stimulating sales" as opposed to

18

"obtaining orders for services," we find that the record evidence counsels against that interpretation.[8]

We have elected to focus our inquiry on the second prong of § 541.500, i.e., whether Gregory obtained orders for services, as opposed to whether she made sales within the meaning of section 3(k) of the Act. After careful consideration of the record and in light of the Congressional agenda behind the passage of the FLSA, we conclude that Gregory did obtain orders for services. Accordingly, her primary duty was the performance of exempt work. Gregory described her duties as follows:

> Q: And you obtained orders for title services?
> A: Yes.
>
> Q: Did you have – so to the extent you promoted the business, it was with the goal of obtaining orders for title services, correct?
> A: Yes.

R40-2 at 24-25.

We also note the language in the DOL's language in the Preamble to 29 C.F.R. Part 541. The outside sales exemption requires an objective demonstration,

---

[8] We note that Appellees' alternative argument concerning Gregory's putative failure to establish any entitlement to overtime compensation appears to have merit. We do not consider the particulars of the argument, however, given our conclusion that the district court correctly determined that Gregory met the requirements of the Fair Labor Standards Act's ("FLSA") outside salesman exemption.

inter alia, that an employee has *in some sense* made a sale. 69 Fed. Reg. 22122, 22162-63 (Apr. 23, 2004). In addition, the DOL has explained that the exemption does not extend to employees "engaged in paving the way for salesmen." Id. In this case, we conclude that Gregory did, indeed, make a sale *in some sense*. She obtained commitments to buy (orders for First Title's title insurance service) and, most importantly, was credited with the sale. She was hired for her prior sales experience and brought a book of clients with her to First Title.[9] R40-3 at 1. Not long after being hired, Gregory's sole source of income was directly tied to the number of orders that she brought in. She listed her clients for the Appellees and received credit (and payment) only for those orders placed by her clients that closed. R40-2 at 30-34. All of her efforts were directed towards the consummation of her own sales and not towards stimulating sales for First Title in general. R40-3 at 3.

We are also convinced that Gregory did not merely "pave the way" for other salesmen. According to Napolitano, "[o]nce an order for title insurance services is obtained, the sale is complete." R40-3 at 3. Gregory did not collect orders and turn them over to another salesperson nor does the record contain evidence of any other intervening sales effort between Gregory and orders placed with First Title. We

_____

[9] It appears that a number of Gregory's clients stopped sending orders to First Title after Gregory's employment was terminated. R40-3 at 4.

20

have already noted § 541.501(d)'s extension of the exemption to employees who take orders for a service that is ultimately performed for the customer by someone else. See 29 C.F.R. § 541.501(d). As opposed to conceiving of Gregory as "paving the way" for others to consummate the sale, we view her as acting more as a conduit through which orders for services flowed. Gregory received credit and payment for those orders that flowed through her to First Title. Indeed, her claim for $280,000 is predicated on receiving credit for those orders placed by her clients even after her employment was terminated. See supra note 2.

As far as the DOL Opinion Letter and the district court opinion relied upon by Gregory, we note that although neither is binding here, both can be fairly reconciled with our decision in this case. First, in the college recruiter scenario described in the DOL Letter, the recruiters were tasked with identifying potential students and inducing them to apply to the college. A number of intervening actors stood between the recruiter and the final consummation of the sale, i.e., the enrollment of the student at the college. Moreover, there was no indication that the recruiters' compensation was directly tied to the number of students who ultimately enrolled.

Likewise, there was no indication that the pharmaceutical representatives in the Amendola case were compensated on a commission basis. Furthermore, the

21

Amendola court addressed only the first prong of § 541.501(a) – making sales within the meaning of section 3(k) of the Act – and did not consider the "obtaining orders . . . for services" prong.  29 C.F.R. § 541.501(a)(2).

Finally, although cited by neither party for the issue at hand, we are obligated to address our own precedent in Wirtz v. Keystone Readers Service, Inc., 418 F.2d 249 (5th Cir. 1969).  In Wirtz, students were engaged in door-to-door sales of magazine subscriptions and sued their employer for overtime compensation.  The employer claimed the student salesmen were "outside salesmen" under the FLSA.  We disagreed and found that although the students solicited orders from potential customers, they were prohibited from collecting money and were instructed to turn over all order forms collected to student managers.  The managers would then subsequently contact the prospect, explain the payment plan and execute the contract.  Id. at 252.  We concluded that the student salesmen were merely "pseudo-salesmen" and not within the coverage of the outside salesmen exemption.  Id. at 261.

Once again, we can readily distinguish our decision in Wirtz with the case before us.  Here, once Gregory obtained the orders, the sales process was complete.  There was no intervening sales effort between her efforts and the consummation of the sale.  Gregory, unlike the student salesmen in Wirtz, did not "pave the way" for

22

another salesperson to consummate the sale, but rather obtained the orders herself. And once the orders were obtained, the sale was complete. Moreover, the student salesmen were not compensated solely on a commission basis, as Gregory was in this case. Accordingly, because Wirtz can be distinguished from this case on its facts, it does not control here.

## III. CONCLUSION

Gregory appeals the district court's grant of summary judgment for the Appellees. We conclude that the district court correctly determined that Gregory met the requirements of the Fair Labor Standards Act's ("FLSA") outside salesman exemption and so was not entitled to overtime compensation. AFFIRMED.

BARKETT, Circuit Judge, Specially Concurring:

The question of whether Nelda Gregory is an "outside salesperson," as defined by the Secretary of Labor in 29 U.S.C. § 213(a)(1), is a close one. However, I believe the decision of the district court should be affirmed because Ms. Gregory has failed to offer proof of overtime hours actually worked. By her own admission, Ms. Gregory cannot locate the one appointment book in which she claims she may have recorded her overtime hours nor did she inform First Title of those hours until shortly before she was fired. Ms. Gregory argues that First Title "should have known" she was working the extra hours; however she does not point to any evidence in the record to support such a claim. Because Ms. Gregory would be unable to collect overtime pay from First Title, any attempt to determine her entitlement to such pay under the FLSA is unnecessary.