[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10845
_____

D.C. Docket No. 9:13-cv-80605-KLR


TODD PIOCH,

Plaintiff - Counter
Defendant - Appellee
Cross Appellant,

versus

IBEX ENGINEERING SERVICES, INC.,
a Florida profit corporation,

Defendant - Counter
Claimant - Appellant
Cross Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(June 14, 2016)

Before MARCUS, JORDAN, and WALKER,[*] Circuit Judges.

---

[*] Honorable John M. Walker, Jr., Circuit Judge for the United States Court of Appeals for the Second Circuit, sitting by designation.

JORDAN, Circuit Judge:

The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., generally requires employers to pay minimum wages and overtime compensation to their employees, but some employees are exempt from its coverage. The exemption at issue in this appeal—the so-called computer employee exemption—provides that the FLSA does not cover an hourly computer software engineer who performs certain duties and who "is compensated at a rate of not less than $27.63 an hour." 29 U.S.C. § 213(a)(17). The main question we address is whether an hourly computer employee who is otherwise exempt under § 213(a)(17) becomes "non-exempt" during his last three weeks of work if the employer withholds his final paycheck. We conclude that the answer to that question is no, and therefore affirm the district court's dismissal of the employee's FLSA claim. We also hold, however, that the district court erred in granting summary judgment to the employee on the employer's state-law counterclaim for unjust enrichment.

## I

For almost 10 years, Todd Pioch worked for IBEX Engineering Services as a computer software and hardware engineer. IBEX hired Mr. Pioch because of his extensive computer skills and software experience and paid him on an hourly basis at a starting rate of $50 and a final rate of $85.40 per hour. Like many hourly employees, Mr. Pioch's hours varied from week to week. Mr. Pioch regularly

2

worked over 40 hours in a workweek and was paid his regular hourly rate, but not overtime, for the extra hours.

From 2003 to 2004, Mr. Pioch worked for IBEX in Nevada. During this time, Mr. Pioch lived with his girlfriend in a home on Bow Creek Court in Las Vegas. In early 2005, Mr. Pioch accepted an offer from IBEX to work with one of its clients, Florida Power and Light, in Juno Beach, Florida. The offer letter explained that Mr. Pioch would be eligible for a per diem allowance for travel to and from work. Significantly, however, IBEX's per diem policy applied only to employees residing more than 50 miles from their workplace.

After his transfer, Mr. Pioch purchased a home in West Palm Beach, Florida, and that home was within 50 miles of FPL's Juno Beach facility. During his assignment with FPL in Florida, Mr. Pioch worked on 49 separate projects and his duties were similar for each of the projects—testing, verifying, and validating computer software and hardware for the company. Mr. Pioch received per diem payments from IBEX from the time of his 2005 transfer from Nevada through 2013.

In 2012, FPL conducted an audit on several engineers, including Mr. Pioch, who were collecting per diem payments. The FPL audit raised concerns about Mr. Pioch's per diem payments from 2005 through 2009—a four-year period for which

3

Mr. Pioch admitted that he listed the Bow Creek Court home in Las Vegas (rather than his West Palm Beach home) as his permanent address.[1]

Following his resignation from IBEX in 2013, Mr. Pioch sued the company under the FLSA, asserting minimum wage and overtime claims. *See* 29 U.S.C. §§ 206, 207. IBEX admitted that it had withheld Mr. Pioch's final three weeks of pay as a result of the FPL audit and its belief that Mr. Pioch had improperly collected $147,230 in per diem payments. In response to Mr. Pioch's FLSA claims, IBEX raised as an affirmative defense that Mr. Pioch was an exempt employee under the Act. IBEX also asserted state-law counterclaims for fraud and unjust enrichment relating to the disputed per diem payments.

Following discovery, IBEX moved for summary judgment on Mr. Pioch's FLSA claims, arguing that he was an exempt hourly computer employee under 29 U.S.C. § 213(a)(17). Mr. Pioch opposed IBEX's motion and moved for summary judgment himself on IBEX's counterclaim for unjust enrichment and for partial summary judgment on the unpaid wages for his final three weeks of work, which totaled $13,367.20.

The district court heard arguments on the parties' cross-motions for summary judgment and ruled (1) that the undisputed facts established that Mr.

---

[1] From 2009 to 2013, Mr. Pioch listed his West Palm Beach home as his permanent address, and worked in another facility in Port St. Lucie that was more than 50 miles from that home. That time period, therefore, is not relevant to IBEX's counterclaim for unjust enrichment.

4

Pioch was exempt from FLSA coverage as a matter of law under § 213(a)(17); and (2) that IBEX's unjust enrichment counterclaim failed because Mr. Pioch's per diem payments constituted wages that are not recoverable by an employee in an FLSA action.[2]

Both parties appealed. In its appeal, IBEX challenges the district court's grant of summary judgment in favor of Mr. Pioch on its state-law counterclaim for unjust enrichment. IBEX maintains that its counterclaim is not barred by the FLSA, and that the district court should have at most declined to exercise supplemental jurisdiction. In his cross-appeal, Mr. Pioch argues that IBEX's withholding of his final paycheck rendered him non-exempt during his last three weeks of work, thereby entitling him to $13,367.20 under the FLSA.

## II

We conduct plenary review of a district court's summary judgment order, viewing the record and drawing all factual inferences in the light most favorable to the non-moving party. *See Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1266 (11th Cir. 2014). Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*,

---

[2] Mr. Pioch did not move for summary judgment on IBEX's fraud counterclaim. The district court ultimately granted Mr. Pioch's motion to dismiss that counterclaim, declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).

5

477 U.S. 317, 322 (1986).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks and citations omitted).

### III

Congress enacted the FLSA in 1938 as a remedial scheme designed to address "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202.  As a part of President Roosevelt's New Deal and its emphasis on economic recovery, the FLSA was designed to eliminate substandard labor conditions in part by imposing a minimum wage and requiring overtime pay for employees.  *See* 29 U.S.C. §§ 206, 207; ELLEN C. KEARNS ET AL., THE FAIR LABOR STANDARDS ACT 1-12 (3d ed. 2015).  "In other words, the [Act] was designed to aid the unprotected, unorganized, and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage."  *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004) (internal quotation marks and citation omitted).

The FLSA imposes a minimum wage for covered employees and requires employers to pay overtime of at least one and one-half times the regular rate to employees working more than 40 hours a week.  *See* 29 U.S.C. §§ 206, 207(a)(1).

6

Congress, however, removed certain employees from FLSA coverage. *See generally* 29 U.S.C. § 213.

Whether an employee meets the criteria for an FLSA exemption, although based on the underlying facts, is ultimately a legal question. *See Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 965–66 (11th Cir. 1997). The employer bears the burden of establishing that an employee is exempt, and we construe exemptions narrowly against the employer. *See id.* at 965. The Supreme Court has cautioned that "extend[ing] an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945).

## A

We begin with the text of the FLSA and its corresponding regulations. Computer employees may be exempt from the minimum wage and overtime compensation requirements under two different provisions of the Act. *See* 29 C.F.R. § 541.400(a) (explaining eligibility for exemption under 29 U.S.C. § 213(a)(1) or 29 U.S.C. § 213(a)(17)). Originally, computer employees were analyzed generally under § 213(a)(1). But in 1996, Congress enacted a more specific exemption in § 213(a)(17) which clarified the "duties" requirements by codifying most of the regulatory language for computer employees. *See* Pub. L.

7

No. 104-188, § 2105, 110 Stat. 1755, 1929 (1996); KEARNS ET AL., THE FAIR LABOR STANDARDS ACT, at 5-145.

The more specific exemption applies to computer employees who perform certain duties, and "in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $27.63 an hour." § 213(a)(17)(A)-(D). In 2004, the Department of Labor tried to simplify the exemptions for computer employees by placing them into one regulatory provision. *See* 29 C.F.R. § 541.400(b). *See also Bergquist v. Fid. Info. Servs., Inc.*, 399 F. Supp. 2d 1320, 1329–30 (M.D. Fla. 2005) (providing an in-depth analysis of the pre-2004 and post-2004 regulations), *aff'd*, 197 F. App'x 813 (11th Cir. 2006).

As revised, the regulations create an interesting scenario. Although a computer employee is evaluated under two different FLSA statutory exemptions, only one of those statutory provisions, § 213(a)(1), grants the Secretary of Labor authority to promulgate regulations on its application. As a result, we have little regulatory guidance for interpreting the more specific exemption for hourly employees under § 213(a)(17). *See* 69 Fed. Reg. 22,122, 22,159 (Apr. 23, 2004) (to be codified at 29 C.F.R. pt. 541 and recognizing that § 213(a)(17) has a "unique legislative and regulatory history").

In applying the FLSA's computer employee exemption to Mr. Pioch, an hourly employee, the district court was presented with evidence establishing that

8

he met the "duties" requirements under § 213(a)(17)(A)-(C).  Though the parties dispute the legal significance of the evidence, they do not dispute the underlying facts that the district court used to determine that Mr. Pioch was exempt.

Significantly, Mr. Pioch does not contest the district court's ruling that he was exempt from FLSA coverage under § 213(a)(17) for the vast majority of his period of employment with IBEX.  He argues only that he ceased being exempt during his final three weeks of work because IBEX failed to pay him for those weeks.  In other words, Mr. Pioch asserts that even if he was exempt from the FLSA's overtime compensation requirements, the § 213(a)(17) computer employee exemption does not prevent him from using the FLSA's minimum wage provision to recover his final three weeks of pay—at his final hourly rate of $85.40 per hour—from IBEX.[3]

**B**

The narrow issue, then, is whether an employee—who is paid by the hour and who is generally exempt from the FLSA under the § 213(a)(17) computer employee exemption—can be considered non-exempt during a three-week period for which his employer withheld a final paycheck.  This is an issue of first impression in our Circuit and, to our knowledge, in the country.

---

[3] Mr. Pioch does not explain why, if he is seeking minimum wage recovery under the FLSA, he is entitled to recover his hourly rate, which far exceeds the minimum wage.

9

Fortunately, we do not write on a completely blank slate. Three Circuits, including our own, have addressed whether the failure to pay an otherwise-exempt *salaried* employee during a period of time renders that employee non-exempt for FLSA claims during that time period. *See Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843 (6th Cir. 2012); *Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361 (11th Cir. 1997); *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983).

In *Nicholson*, we considered whether two managerial employees, whose employer had failed to pay them their negotiated salaries, could assert both an FLSA claim and a breach of contract claim. *See* 105 F.3d at 1362–63. In separate findings, the district court and a jury by special verdict had concluded that each employee met the criteria for exempt administrative employees under § 213(a)(1) of the Act. *See id.* The employees appealed, arguing that the exemption required a minimum weekly salary and that they could not have been exempt as a matter of law "because they never received a dime . . . ." *Id.* at 1362. As a practical matter, we considered this "an unusual interpretation of the FLSA, one that would convert an entire category of state contract law actions into federal labor suits." *Id.*

In determining whether the *Nicholson* employees were paid on a salary basis, as required under the § 213(a)(1) exemption, we looked to what an employee was promised rather than what he actually received. *See id.* at 1365. We first turned to the plain language of the Department of Labor regulation defining the

10

salary-basis test which, at the time, stated "it must be that '*under his employment agreement* he regularly receives each pay period . . . a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction' . . . ." *See id.* (quoting 29 C.F.R. § 541.118(a) (1973)) (emphasis in original). Recognizing that the regulations at the time were "somewhat contradictory and opaque," we then considered congressional intent. *See id.* We concluded that focusing on what was owed pursuant to an agreement also reflected "the protective stance toward poorer and powerless workers that Congress took in the FLSA." *Id.* Using a hypothetical, we illustrated how following the *Nicholson* employees' logic could allow an exempt chief executive officer to assert an FLSA claim—rather than a breach of contract claim—against an employer to recover an unpaid salary. *See id.* We therefore affirmed the findings that both employees were exempt, as a matter of law, as administrative employees. *See id.* at 1362.

The First Circuit had taken a similar approach in *Donovan*, which was decided in 1983. In that case, the Secretary of Labor sued an employer for minimum wages and overtime payments under the FLSA on behalf of eight managerial employees. *See* 712 F.2d at 1510. The parties stipulated that the employees were exempt under § 213(a)(1) until their final two to three weeks. *See id.* at 1516. The district court considered whether the employees could invoke the FLSA's minimum wage protections during the time period when their employer

failed to pay their salaries (right before closing its plant). *See id.* at 1510. The district court held that the employer's nonpayment did not affect the employees' exempt status. *See id.* The First Circuit affirmed, reasoning that the employees were guaranteed at least $155 per week, the salary-level requirement at that time under 29 C.F.R. § 541.1(f) (1975), and that no precedent instructed that the FLSA should cover "exempt employees whose contractual salaries are not paid." *Id.* at 1517.

The rationale of *Nicholson* and *Donovan*, if carried over to exempt employees who are paid by the hour, supports the district court's grant of summary judgment in favor of IBEX on Mr. Pioch's FLSA minimum wage claim. But Mr. Pioch directs us to the Sixth Circuit's opinion in *Orton*, which he says supports his position.

In *Orton*, an executive vice-president sued his employer for wages under the FLSA for a five-month period during which he worked, but was not paid his $125,000 annual salary. *See* 668 F.3d at 845. The district court concluded that the employee was an exempt salaried employee under § 213(a)(1) who had "no claim under the FLSA for back wages." *Id.* at 847. Applying the salary-basis test, the district court granted the employer's motion to dismiss because the employee failed to establish that his "base salary was subject to reduction because of variations in the quality or quantity of the work performed [and] . . . [t]he

12

withholding of compensation for several months, if true, would be insufficient . . . to convert a position from salary to hourly." *Id.* at 846.

The Sixth Circuit in *Orton* reversed the district court's ruling for two reasons. First, the district court's holding rested on outdated, pre-2004 Department of Labor regulations, and "employment agreements are no longer the relevant starting point for whether an employee is paid on a salary basis." *Id.* at 848 (distinguishing our analysis in *Nicholson* by examining the revised regulations defining the salary-basis test). Second, the district court had improperly placed the burden on the employee, rather than the employer, to establish the exemption. *See id.* Notably, the Sixth Circuit clarified that it "review[ed] only the district court's conclusions on the salary-basis test." *Id.* at 847.

Like *Nicholson* and *Donovan*, *Orton* dealt with employees paid on a salary basis. But *Orton*, as we explain, does not help Mr. Pioch here.

We agree with the Sixth Circuit and Mr. Pioch that the removal of the phrase "under his employment agreement" in the revised Department of Labor regulations cuts against our interpretation of the salary-basis test in *Nicholson* and the First Circuit's similar interpretation in *Donovan*. The salary-basis test, however, is just one of three tests for analyzing a salaried employee's exempt status under § 213(a)(1). The current relevant Department of Labor regulations for this provision are found in 29 C.F.R. § 541.100 *et seq.*, and each one requires (1) a salary-level

13

test; (2) a salary-basis test; and (3) a "duties" test. *See* 29 C.F.R. §§ 541.600, 541.602, 541.700. "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). Because there is no test like the salary-basis test for hourly computer employees under § 213(a)(17)—the exemption at issue here—*Orton* is of limited assistance.

## C

For almost 10 years, Mr. Pioch's hourly rate was higher—two to three times higher—than the $27.63 hourly rate required for exemption under § 213(a)(17)(D). Mr. Pioch nonetheless argues that he was not exempt during his final three weeks because he was not paid at all. We disagree.

Outside of the salary-basis test context, *Nicholson* and *Donovan* provide some guidance for interpreting Congress' intent for the FLSA and its exemptions for highly paid employees. Like the salaried employees in *Donovan*, Mr. Pioch has failed to provide us with a compelling reason to hold that his exempt status under the FLSA terminated during the three-week period that IBEX did not pay him. The FLSA, after all, is not a vehicle for litigating breach of contract disputes between employers and employees. *See Donovan*, 712 F.2d at 1517 (declining to extend Congress' FLSA protection "to highly salaried employees whenever their employment contracts are breached"). And we do not think that *Orton* completely

14

undermines our analysis of the FLSA in *Nicholson*.  We continue to believe that "[t]o read the FLSA blindly, without appreciation for the social goals Congress sought, would also do violence to the FLSA's spirit."  *Nicholson*, 105 F.3d at 1364.  *See also Gregory v. First Title Of Am., Inc.*, 555 F.3d 1300, 1307 (11th Cir. 2009) (applying the FLSA's outside salesman exemption and recognizing the difficulty of "narrowly constru[ing] the exemption without diminishing the spirit of its parent legislation").  What Mr. Pioch is essentially trying to do is assert a state-law breach of contract claim, for his agreed-to hourly rate, through the FLSA.

Another way of thinking about this scenario is to follow the lead of *Orton* and look only to what Mr. Pioch was paid until his final three weeks.  During his employment with IBEX, Mr. Pioch's starting rate was $50 per hour and his final rate was $85.40 per hour.  Setting overtime considerations aside, Mr. Pioch's final hourly rate amounted to $3,416 for a 40-hour work week.  That weekly amount knocks the statutory minimum of $455 per week for salaried employees out of the park.  *See* 29 C.F.R. § 541.400(b) (providing salary level for a § 213(a)(1) exempt employee).  Moreover, it is three times higher than the $1,105.20 an exempt hourly computer employee would make working 40 hours while receiving the statutory minimum of $27.63 per hour.  *See* § 213(a)(17)(D).

Mr. Pioch presented evidence to the district court about his hourly earnings before his final three weeks with IBEX, and that evidence shows he made over

15

$180,000 during his last year of work.  We recognize that the FLSA is generally applied on a weekly basis, but the Department of Labor has discussed a benchmark for yearly salaries calculated for 40-hour workweeks.    Salaried computer employees under the § 213(a)(1) exemption must make at least $23,660 per year. *See* 69 Fed. Reg. 22,122, 22,123 (Apr. 23, 2004) (to be codified at 29 C.F.R. pt. 541).  Hourly computer employees under § 213(a)(17) working 40 hours will make at least $57,470 per year based on the statutory minimum.  *See id.* at 22,164 n.12. Again, even without receiving his final three weeks of pay, Mr. Pioch's earnings for his final year are well above the benchmark salaries contemplated for both salaried and hourly exempt computer employees under the FLSA.

We find some support for our position in the Supreme Court's decision in *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012).    In *Christopher*, two pharmaceutical sales representatives sued under the FLSA for overtime compensation, and their employer argued that they were exempt as "outside salesmen" under § 213(a)(1).  *Id.* at 2164.  Like salaried computer employees, outside salesmen are grouped into the more general § 213(a)(1) exemption to the FLSA.    Much of the Court's rationale in *Christopher* is inapplicable here, but because computer employees are analyzed under both § 213(a)(1) and § 213(a)(17), we find the *Christopher* majority's brief discussion of the purpose of the § 213(a)(1) exemption persuasive.  *See* 132 S. Ct. at 2173.

16

The Supreme Court recognized in *Christopher* that the § 213(a)(1) "exemption is premised on the belief that exempt employees 'typically earned salaries well above the minimum wage' and enjoyed other benefits that 'se[t] them apart from the nonexempt workers entitled to overtime pay.'" *Id.* at 2173 (citing the Preamble to the Department of Labor's pt. 541 regulations). The Court reasoned that the salaried employees in *Christopher*—"each of whom earned an average of more than $70,000 per year and spent between 10 and 20 hours outside normal business hours each week performing work related to . . . his assigned sales territory—[were] hardly the kind of employees that the FLSA was intended to protect." *Id.* at 2173.

IBEX paid Mr. Pioch hourly rates that were considerably higher than both the § 206(a)(1) minimum wage of $7.25 per hour and the hourly rate that Congress expressly requires under § 213(a)(17)(D) to qualify as exempt. *See* KEARNS ET AL., THE FAIR LABOR STANDARDS ACT, at 5-145 (noting that Congress froze the exemption hourly rate at $27.63 per hour in 1996). As the Supreme Court reasoned in *Christopher* (when it considered employees earning more than $70,000 per year), we do not believe that Mr. Pioch, a highly-paid hourly employee typically earning over six figures a year, is the type of employee that the FLSA's wage requirements were designed to protect. Mr. Pioch therefore cannot use the FLSA as the vehicle for recovery of his hourly salary. We agree with the district

17

court that an hourly computer employee's exempt status under § 213(a)(17) does not evaporate simply because the employer withholds a final paycheck.

## IV

Despite holding that Mr. Pioch was exempt under (and therefore not covered by) the FLSA, the district court ruled that IBEX's unjust enrichment counterclaim failed on the merits as a matter of law because it was really a claim for wages that are not recoverable by an employer in an FLSA action. The district court acknowledged (and Mr. Pioch conceded) that IBEX presented evidence that Mr. Pioch improperly collected $147,230 in per diem payments by misleading IBEX for a number of years about the location of his permanent residence. This evidence would likely have been sufficient to get the unjust enrichment claim to a jury. *See generally Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1100 (Fla. 3d DCA 2014) ("The elements of a claim for unjust enrichment are: (1) plaintiff conferred a benefit on the defendant; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff."). IBEX argues that, after concluding that Mr. Pioch was exempt from the FLSA, the district court should have (at most) dismissed its state-law counterclaim for unjust enrichment without prejudice under 28 U.S.C. § 1367(c). We agree with IBEX.

18

**A**

We start with the district court's holding that Mr. Pioch's per diem payments were "wages" that are not recoverable by an employer in an FLSA action. The district court first looked to whether the disputed per diem payments were wages by examining federal law and the facts presented by the parties at summary judgment. After ruling that Mr. Pioch's per diem payments were indeed wages, the district court, relying on *Gagnon v. United Technologies, Inc.*, 607 F.3d 1036 (5th Cir. 2010), reasoned that an employer is not permitted to assert counterclaims to recover "wages" from its employee in an FLSA case.[4]

As an initial matter, the district court did not account for the fact that Mr. Pioch no longer had viable claims under the FLSA. The district court ruled—correctly, as we now hold—that Mr. Pioch was exempt from the FLSA's coverage. As IBEX aptly points out, Mr. Pioch was not entitled to FLSA wages paid "free and clear" because he was exempt. *See Arriaga v. Fla. Pac. Farms*, *LLC*, 305 F.3d 1228, 1235 (11th Cir. 2002) (explaining that FLSA wages must be paid "free and clear" of improper deductions under 29 C.F.R. § 531.35). And if Mr. Pioch was not entitled to recover anything under the FLSA, it is not clear to us why IBEX's unjust enrichment counterclaim would be barred.

---

[4] The district court did not rule, as Mr. Pioch had argued, that IBEX's unjust enrichment counterclaim was barred by Florida's two-year statute of limitations under Fla. Stat. § 95.11(4)(c).

19

We recognize that some courts, including our own, have been hesitant to allow employers to assert state-law counterclaims against employees in FLSA cases. *See, e.g.*, *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 743 (5th Cir. 2010); *Donovan v. Pointon*, 717 F.2d 1320, 1323 (10th Cir. 1983); *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974), *abrogated on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988). In *Brennan*, for example, the former Fifth Circuit reasoned that "[t]he only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards [and that] [t]o clutter [FLSA] proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the Act." *Brennan*, 491 F.2d at 4. Similarly, the Tenth Circuit ruled in *Pointon* that an employer could not set-off its employee's FLSA recovery through a counterclaim (though it could sue the employee in state court) because that would delay and interfere with the process of bringing the employer into compliance with the FLSA's overtime requirements. *See Pointon*, 717 F.2d at 1323.

The current Fifth Circuit later recognized an employer's ability to set-off an employee's recovery in FLSA cases, but narrowed set-off recovery to money "[that] can be considered wages that the employer pre-paid to the plaintiff-employee." *Martin*, 628 F.3d at 742. *Cf. Singer v. City of Waco*, 324 F.3d 813, 828 n.9 (5th Cir. 2003) (interpreting *Brennan* and clarifying that an employer's set-

20

off recovery cannot cause an employee's FLSA recovery to fall below the statutory minimum wage). It does not seem to us, however, that those concerns carry over to a situation like the one here where an employee is exempt from the FLSA's coverage and therefore cannot recover anything under the Act.

We also think that the district court's reliance on the Fifth Circuit's decision in *Gagnon* was misplaced, as that case is both factually distinguishable and legally insufficient to answer the question posed here. In *Gagnon*, a skilled aircraft painter was paid an hourly rate of $5.50 per hour, an overtime rate of $20 per hour, and a "per diem" rate of $12.50 per hour. *See Gagnon*, 607 F.3d at 1039. He sued his employer under the FLSA, alleging that the payment scheme reduced the amount of overtime compensation he should have received. *See id.* at 1040. The district court ruled in favor of the painter, concluding that the "per diem" should have been included in his regular rate of pay for purposes of calculating overtime compensation. *See id.* at 1040–41.

The painter's per diem payments were troubling because they were paid hourly, bore no rational relationship to living or travel expenses, and the combined regular rate and per diem payments was suspiciously close to the "prevailing wage for similarly skilled craftsmen." *See id.* at 1039–41. The Fifth Circuit reasoned that the employer manipulated the overtime rate of the painter by designating a portion of his "wages as 'straight time' and a portion as 'per diem.'" *Id.* at 1041.

21

On those facts, the Fifth Circuit ruled that the employee's hourly per diem payments were part of "his regular rate for the purpose of determining overtime pay due under the FLSA." *Id.* at 1042.

The employer in *Gagnon* asserted counterclaims for breach of contract and fraud against the employee and challenged the per diem it had paid "[because] he lived less than ten miles from the worksite." *Id.* at 1041–42. Significantly, however, the district court in *Gagnon* did not address the employer's state-law counterclaims. *See id.* at 1042–43. The Fifth Circuit affirmed the district court's decision not to address the counterclaims, but it went a step further, stating that its conclusion that "the hourly per diem wages must be included in base pay would seem to eviscerate" the employer's breach of contract and fraud counterclaims. *Id.* at 1042. This language in *Gagnon* does not mean that IBEX's counterclaim was legally barred in a case where no FLSA claim remained.

Unlike the painter in *Gagnon*, who had a viable FLSA overtime claim, Mr. Pioch was exempt from FLSA overtime protection and was paid a set daily amount (the per diem) that reflected his expected expenses for distant travel. Mr. Pioch's per diem payments also did not change based on the hours he worked, and there is no concern here that IBEX used per diem payments to avoid paying overtime. Mr. Pioch fails to explain how, in light of these factual differences, *Gagnon* requires dismissal, on the merits, of IBEX's unjust enrichment counterclaim. We therefore

22

hold that, if an employee who sues under the FLSA is not covered by (or is exempt under) the Act, there is no bar to the employer asserting a state-law counterclaim against the employee.

**B**

If there is a valid merit-based ground for ruling in favor of Mr. Pioch on IBEX's unjust enrichment counterclaim, we can of course affirm.  *See, e.g.*, *Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1283 (11th Cir. 2012) (noting that we can affirm a grant of summary judgment on any ground supported by the record, including grounds on which the district court did not rely). Mr. Pioch argues that, under Florida law, IBEX's counterclaim was time-barred under Fla. Stat. § 95.11(4)(c) (imposing a two-year statute of limitations for actions "to recover wages or overtime or damages or penalties concerning payment of wages and overtime").  The district court acknowledged that Mr. Pioch had made this argument, but it did not base its summary-judgment ruling on statute of limitations grounds.  We exercise our discretion and decline to decide whether IBEX sought to recover "wages" from Mr. Pioch as that term is defined under Florida law.

On remand, we note that the district court has two options.  The district court can decline to exercise supplemental jurisdiction over the unjust enrichment counterclaim (as it did with respect to IBEX's fraud counterclaim).  Or it can

23

decide, in the first instance, whether IBEX's attempt to recover per diem payments was unequivocally a claim to recover wages that is now time-barred under Florida law.[5]

## V

We affirm the district court's grant of summary judgment in favor of IBEX as to Mr. Pioch's FLSA claim, and reverse the entry of summary judgment in favor of Mr. Pioch as to IBEX's state-law counterclaim for unjust enrichment.  The case is remanded to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[5] Mr. Pioch contends that "any claim for wages—no matter the legal theory under which it is brought—is subject to the [two-year] statute of limitations under what is now [§] 95.11(4)(c)." Appellee's Reply Br. at 4.  But the two cases cited by Mr. Pioch in support of this argument involve an employee's attempt to recover wages from an employer.  *See Blackburn v. Bartsocas*, 978 So. 2d 820, 821–22 (Fla. 4th DCA 2008) (reversing jury verdict in favor of employee on unjust enrichment claim because it was actually a claim for wages); *Ultimate Makeover Salon & Spa, Inc. v. DiFrancesco*, 41 So. 3d 335, 337 (Fla. 4th DCA 2010) (discussing the trial court's determination that the employee's claims, including one for unjust enrichment, were wage claims).