[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11647
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-01940-MLB

CHARLOTTE MOORE,

 Plaintiff-Appellant,

versus

GWINNETT COUNTY,
a political subdivision of the State of Georgia,
DAVID A. LEIGH,
JUSTIN C. RICHEY,
JENNIFER L. ROBERTS,
K.M. LAW,

 Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 4, 2020)

Before JILL PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Charlotte Moore appeals the district court's grant of summary judgment to four police officers on her § 1983 claims alleging several Fourth Amendment violations. This case stems from two separate incidents where Gwinnett County police investigated disputes between Moore and sublessees of her rented home. Regarding the first incident, three officers—Roberts, Leigh, and Richey—arrested Moore for theft after she admitted to unlawfully moving a sublessee's personal property to a self-storage unit. The officers initiated the arrest while Moore stood halfway outside her front door. But when Moore suddenly bent down behind the door into a dark foyer in direct defiance of their commands, the officers grabbed her arms and entered the home. Moore resisted arrest, and then Richey used a taser to subdue her. Later, Moore asserted § 1983 claims against the officers for false arrest, warrantless entry, and excessive force. Regarding the second incident, Officer Law investigated another dispute between Moore and a different sublessee where Moore had locked out the sublessee from the house. Officer Law obtained an arrest warrant for Moore after she refused to allow the sublessee to re-enter the home to obtain personal property. Because Moore complied with police requests, however, Law never executed the warrant. Later, Moore filed a claim of false

2

arrest against Law.[1]  The district court granted all four officers qualified immunity on summary judgment.[2]  We affirm on all counts on appeal.[3]

## I. Background

Moore rented a home in Gwinnett County and her lease allowed her to sublet rooms to others.  The two incidents giving rise to this suit involve disputes between Moore and sublessees when police officers were called to intervene.

## A. The First Incident (2014)

During the summer of 2014, Moore began having conflicts with one of her sublessees, Christopher Lawrence.  On July 14, after several weeks of tension, Moore entered Lawrence's locked room without permission by using a master key.  She collected Lawrence's belongings and transferred most of them to a storage facility.  Moore also changed the locks to the house.  At this time, Moore did not have a dispossessory warrant.

---

[1] Officer Law did not file a brief in this appeal, but we may review this issue nonetheless. *See* 11th Cir. R. 42-2(f) ("When an appellee fails to file a brief by the due date . . . the appeal will be submitted to the court for decision without further delay.").

[2] The district court found in the alternative that Moore failed to state a claim against Officer Law because she asserted her claim against him in the fact section of her amended complaint.  The district court also found that Moore abandoned any argument that she had a cognizable claim against Law by failing to respond to Law's motion for summary judgment on the grounds that her amended complaint stated no claims against him.  We affirm on the merits and need not address these alternative holdings.  *Pioch v. IBEX Eng'g Servs., Inc.*, 825 F.3d 1264, 1275 (11th Cir. 2016) (noting that we may affirm a grant of summary judgment on any ground supported by the record, including an alternative "merit-based ground").

[3] Moore also asserted § 1983 claims against Gwinnett County on which the district court granted summary judgment.  Moore does not appeal this ruling and we do not address it.

When Lawrence returned home from work and discovered he was locked out, he called the police. Roberts, Leigh, and Richey arrived soon after, and Lawrence explained that Moore had removed his property. Lawrence showed the officers a document Moore had provided him listing the address of the storage facility. Officer Leigh confirmed that the storage facility was closed for the night and thus Lawrence could not access his property.

The three officers approached Moore's front door, and Leigh knocked. Moore answered by opening the door far enough to put her left arm out. After a brief discussion in which Moore admitted she took Lawrence's belongings to the storage locker without his permission, the officers told her she was under arrest for theft by taking and commanded her to step outside. Moore did not comply, and quarreled over the reason for her arrest. Roberts repeated the instruction for Moore to step out, and Moore responded, "I don't have shoes or nothing on." An officer replied, "We'll get your shoes." The back and forth over Moore's shoes and the reason for her arrest continued, and tempers on both sides quickly rose.

What happened next is somewhat disputed. Moore testified that she suddenly bent down behind the door to get her shoes. She then "blacked out," only to regain consciousness a few moments later while lying on the floor of her foyer with an officer holding one of her arms behind her back. An officer threatened, "Ma'am, if you do not turn around, you're gonna get tased . . . again." At that

4

moment Moore blacked out again, but came to a few seconds later.  Moore concedes that throughout this struggle she engaged in "passive resistance,"[4] but she denies "attempt[ing] to hit or kick the officers."  Eventually, the officers stood her up and placed her in handcuffs.  Moore testified that she was tased three or four times in total during the course of these events.

The officers' account of the arrest is mostly compatible with Moore's, with two significant exceptions.  The officers testified that, as Moore retreated into the dark foyer, Leigh grabbed her left arm (which, again, had been outside of the door) to stop her from "reaching for a nightstand" and thus prevent her from obtaining "whatever item, whether it was a gun or shoes."  At that same moment, Roberts grabbed Moore's right arm, and Moore "pulled" Roberts inside the house.  Leigh and Richey immediately came inside to help Roberts complete the arrest.

Contrary to Moore's version of the events, the officers assert that Moore resisted by "thrashing" and "kicking," and ignored their repeated commands to place her hands behind her back.  Richey claims that Moore then kicked him in the groin, at which point he determined the situation might warrant use of his taser to subdue her.  Roberts then loudly warned Moore that she would get tased if she did not comply.  After the officers repeated commands to Moore for her to put her

---

[4] Roberts described Moore's behavior as "noncompliant" but not "aggressive," that is, she was "using her strength to prevent me from putting her hands behind her back" and "trying to wrench away."

5

hands behind her back and seeing no compliance, Richey "drive stunned" Moore on her lower back—that is, he removed the probes and applied the taser directly to her person while administering a shock.

Also in variance with Moore's testimony, Richey contends that he pulled the taser's trigger only once. This single pull initiated a five-second, continual tase. Because Moore pulled away from the taser as soon as it began shocking her, Richey quickly re-applied the device to her back as it continued the same five-second release. Corroborating Richey's testimony, the taser's log file confirms that the device was fired just once.

After being handcuffed, Moore told Richey and a sergeant (who had been called to the scene) that she had no complaints of injuries and did not require medical assistance. Moore was then transferred to jail. Leigh sought an arrest warrant on the bases of theft and obstructing an officer. The magistrate judge declined to issue a warrant on the theft charge because the judge had spoken with Moore at an earlier time and advised her to place Lawrence's property in a storage facility. This prior communication between the judge and Moore came as a surprise to the officers. The magistrate nevertheless issued the warrant on the basis of felony obstruction. Accordingly, Moore was charged with obstructing or hindering of a law enforcement officer in violation of Georgia law.[5]

---

[5] The State later dismissed the charge.

6

## B. The Second Incident (2015)

A year and a half later, on November 27, 2015, Moore had a dispute with a different sublessee, Shannon Daley. Officer Law and two other officers were called to the scene and quickly learned that Moore had self-evicted Daley without a dispossessory warrant. Daley was willing to leave but needed to re-enter the house to obtain personal property that was still in his room. Because Moore initially refused Law's instructions to allow Daley to re-enter the house to obtain his property, Law obtained a warrant for her arrest, charging her with trespassing pursuant to O.C.G.A. § 16-10-24(a). While Law left the scene to retrieve the warrant, another officer spoke with Moore through a window of the house. Officers warned Moore that they had obtained an arrest warrant and would arrest her unless she allowed Daley to re-enter the house to obtain his property. Moore complied and let Daley in with an officer escort. Immediately after Daley and an officer exited the home, Law recalled the warrant.[6]

## C. Procedure

Moore filed the instant complaint against officers Roberts, Leigh, Richey, and Law on June 10, 2016. She alleged violations of her Fourth Amendment rights pursuant to 42 U.S.C. § 1983. Counts I and III of her amended complaint asserted

---

[6] The parties disagree as to whether Law entered the home with Daley. It is unnecessary for us to resolve this factual dispute because it is immaterial to the issue of whether Officer Law had probable cause to arrest Moore.

7

that Roberts, Leigh, and Richey committed false arrest.  Count II asserted that these same officers' entry into Moore's home was a warrantless entry without exigent circumstances.  Count IV asserted that Roberts, Leigh, and Richey used excessive force during the arrest.  Lastly, in the fact section of her amended complaint, Moore also asserted that Law's actions constituted false arrest in violation of her Fourth Amendment rights.  The district court granted all four officers qualified immunity on all claims.

## II. Standard of Review & Background Law

"We review the district court's grant of summary judgment *de novo*, 'view[ing] all the evidence and draw[ing] all reasonable inferences in the light most favorable to the non-moving party.'"  *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019) (quoting *Caldwell v. Warden*, 748 F.3d 1090, 1098 (11th Cir. 2014)) (alterations in original).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

To claim qualified immunity, a defendant must first show she was performing a discretionary function.  *See Whittier v. Kobayashi*, 581 F.3d 1304, 1307–08 (11th Cir. 2009).  "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply."  *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009).  A plaintiff

demonstrates that qualified immunity does not apply by showing "(1) the defendant violated a constitutional right, and (2) [the] right was clearly established at the time of the alleged violation." *Whittier*, 581 F.3d at 1308.

## III. Discussion

### A. Claims Against Officers Roberts, Leigh, and Richey for the 2014 Incident

#### 1. False Arrest Claims

We first address Moore's contention on appeal that the district court erred by granting summary judgment on her false arrest claims. "An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* An officer seeking qualified immunity "need not have actual probable cause, but only 'arguable' probable cause." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010) (quoting *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010). "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'" *Id.* (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1232

(11th Cir. 2004)).  This standard is objective, and it "does not include an inquiry into the officer's subjective intent or beliefs."  *Grider*, 618 F.3d at 1257.  Furthermore, "[w]hether an officer possesses arguable probable cause depends on the elements of the alleged crime and the operative fact pattern."  *Id*.  An officer need not prove every element of a crime in order to show she had arguable probable cause.  *Id*.

We find that the officers had probable cause to arrest Moore in 2014.  The officers arrested Moore for theft by taking in violation of O.C.G.A. § 16-8-2, which prohibits a person from "unlawfully tak[ing] or . . . appropriat[ing] any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."  Georgia law "defines the crime of theft by taking as the act of unlawfully taking another's property with the intent to withhold it 'permanently *or* temporarily.'"  *Sorrells v. State*, 267 Ga. 236 (1996) (emphasis in original) (quoting O.C.G.A. § 16-8-1(1)(A)).  Moore admitted to the officers at the scene of the arrest that she had taken and transported Lawrence's property to a storage locker without his permission.  The officers knew that the storage facility was closed for the night, and thus Lawrence was deprived of access to his property.  Accordingly, it is clear from Moore's admission that the officers had probable cause to arrest.

10

Moore's only argument to the contrary on appeal is that the officers lacked probable cause because her dispute with Lawrence was a "civil matter" and a judge "had already denied a warrant for [her] arrest."  But her decision to take and relocate Lawrence's property without his permission and without a dispossessory warrant was not a mere civil matter.  This action reasonably appeared to the officers to violate the Georgia criminal theft statute.  And although a judge later denied a warrant for her arrest on this basis, the officers had not yet sought that warrant.  Thus, the officers could not possibly have known at the time they made the arrest that Moore's seeming theft would not serve as a basis for probable cause. Based on the totality of circumstances within the officers' knowledge at the time of Moore's arrest, then, a reasonable officer in their shoes would believe that Moore had committed theft in violation of O.C.G.A. § 16-8-2.  Accordingly, the officers had probable cause to arrest Moore.

## 2. Warrantless Entry Claim

Moore next contends that the district court erred by granting summary judgment on her warrantless entry claim.[7]  "Because 'the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is

---

[7] The district court also found that Moore waived any argument concerning exigent circumstances by failing to respond to the officers' exigent-circumstances justification in her summary judgment response.  We need not decide the issue of waiver here because exigent circumstances clearly justified the officers' entry into her home to complete the arrest.

11

directed,' it is 'a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Bates v. Harvey*, 518 F.3d 1233, 1239 (11th Cir. 2008) (quoting *Payton v. New York*, 445 U.S. 573, 585–86 (1980)).  The Constitution allows some exceptions to the general prohibition against warrantless entry into a home, including where "exigent circumstances" exist.  *Id.*  Exigent circumstances may include "danger to the arresting officers . . . ."  *Id.* at 1245 (quoting *United States v. Edmondson*, 791 F.2d 1512, 1515 (11th Cir. 1986)).

The district court found that the warrantless arrest was justified by exigent circumstances because it was reasonable for the officers to conclude they faced imminent risk of serious injury when Moore turned away from them towards her home's dark foyer after being told she was under arrest.  We agree.  Although an audio recording of the incident demonstrates that Moore claimed she wanted merely to grab her shoes, the officers were not obligated to take her at her word.  As an objective matter, the officers' reluctance to trust Moore is supported by the fact that Moore had spent several minutes quarreling with them regarding the basis of her arrest and ignoring their commands to come outside.  Moreover, they told her to not grab the shoes.  Accordingly, upon our own review of the record and viewing it in the light most favorable to Moore, we hold that the district court did

12

not err in finding that exigent circumstances justified the officers' warrantless entry into Moore's home.

### 3. Excessive Force Claim

Moore contends on appeal that the district court erred in granting the officers qualified immunity on her excessive force claim.[8]  "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002).  Like other Fourth Amendment inquiries, judicial scrutiny of an officer's use of force "requires balancing of the individual's Fourth Amendment interests against the relevant government interests." *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546 (2017).  "The operative question in excessive force cases is 'whether the totality of the circumstances justifie[s] a particular sort of search or seizure.'" *Id.* at 1546 (alteration in original) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)).  We assess the reasonableness of the force used under an objective rubric that "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

---

[8] We note that it is not clear from Moore's brief whether she appeals the district court's judgment on the excessive force issue as to all officers or as to Richey only.  Although her brief references "the Appellees" and states that she was "attacked by all three officers inside her home," she points only to "the use of a taser" as a violation of her constitutional right against excessive force.  The uncontroverted record shows that only Richey used a taser.  We need not decide the issue of which of the three officers are included in this claim, however, because we find on review of the entire record that none of the three officers involved in Moore's arrest applied excessive force in violation of her Fourth Amendment right.

13

(quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  We conduct a three-part inquiry to facilitate our constitutional evaluation of an officer's use of force by considering: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1324 (11th Cir. 2017) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (2002)).

The district court found that all three *Stephens* factors favor the officers. After reviewing the record in the light most favorable to Moore, we agree.  First, Moore's conduct and the circumstances of the arrest reasonably demonstrated a need for the application of force.  In spite of the officers' numerous commands that she place her hands behind her back and submit to the arrest, Moore exerted what she describes on appeal as "passive resistance."  As they struggled together on the ground, Roberts loudly warned Moore that she was "going to get tased," and officers repeated their commands for Moore to put her hands behind her back seven times.  Furthermore, the setting and situation itself contained an element of potential danger.  The officers struggled to arrest Moore in the dark foyer of her home.  And Moore had spent several minutes preceding the arrest ignoring their directives that she step outside.

We have affirmed the use of a taser in circumstances where an officer undertook far fewer attempts to control the subject without resorting to a taser.  For

14

instance, in *Draper v. Reynolds*, 369 F.3d 1270, 1277–79 (11th Cir. 2004), we upheld the use of a taser after a suspect refused a police officer's instruction to get paperwork five times.  Here, the officers gave at least seven commands for Moore to submit to the arrest once they were in her foyer before using a taser—and that number balloons if one counts the commands for Moore to come outside peacefully in the first place.  Although the exact number of ignored commands is not dispositive, we have held that "noncompliance or continued physical resistance to arrest justifies the use of force by a law enforcement officer."  *Wate v. Kubler*, 839 F.3d 1012, 1021 (11th Cir. 2016).  Moore was unquestionably noncompliant here.  Furthermore, the officer in *Draper* used his taser outdoors on the side of a highway, 369 F.3d at 1272, whereas here the officers struggled with Moore in a setting unfamiliar to them but intimately familiar to her.  This disparity of familiarity is significant because the officers did not know whether Moore had a gun in the nightstand by the door.  Accordingly, based on the uncontroverted facts alone, the officers reasonably believed they needed to use a taser to subdue Moore.[9]

Second, the use of a single taser shock in this situation was not disproportionate to the need for force.  Although Moore claims that Richey tased

---

[9] We note that our analysis does not require us to consider the factual dispute over whether Moore kicked Richey in the groin.

15

her more than once, she provides no evidence other than her testimony to support this claim. Whereas under the applicable standard of review we might have been obligated to accept her version of the story where only the officers' testimony stood in opposition, we need not do so where, as here, hard evidence contradicts her testimony. *See Singletary v. Vargas*, 804 F.3d 1174, 1183 (11th Cir. 2015) ("[W]hen 'opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it,' a court should not adopt the contradicted version for purposes of ruling on a motion for summary judgment." (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007))). The taser log shows that the taser was fired only once. And the audio recording of the arrest also suggests that Richey used the taser once. We therefore affirm the district court's conclusion that Richey fired the taser only once. In *Draper*, we found that a "single use of [a] taser gun may well . . . *prevent*[] a physical struggle and serious harm" to officers in a tense situation where a suspect was repeatedly noncompliant. 369 F.3d at 1278 (emphasis added). This principle applies with even greater force here, where a physical struggle has ensued and the risk of officer harm is thereby heightened. Accordingly, we find that Richey's single use of a taser under the circumstances was not disproportionate to the officers' need for Moore to submit to the arrest.

16

Third, Moore does not allege that Richey's use of a taser caused her any injury sufficient to tip the scale in her favor. The uncontroverted evidence shows that Richey asked Moore if she needed medical attention immediately after the arrest and she stated that she did not. On appeal, Moore alleges that she "loss conscious [sic]" and received "permanent scars" as a direct result of the tasing. Without wading into any credibility determinations about these asserted injuries, we conclude that Moore's temporary loss of consciousness and some scarring are not enough on their own to show that Richey's use of a taser was unjustified in light of the totality of the circumstances.

Accordingly, after examining the record in the light most favorable to Moore, we find that Moore has not met her burden of showing that the officers used excessive force in violation of her constitutional rights.

### B. Claims Against Officer Law for the 2015 Incident

Finally, we turn to Moore's false arrest claim against Law. Moore asserts that the district court erred in dismissing her claim against Law arising from the incident on November 27, 2015. The district court found dispositive the fact that Law did not "execute[] the warrant" to arrest Moore. Moore contends on appeal that the fact the warrant was not executed cannot resolve this case. Rather, she argues that pursuant to an objective, reasonable man standard, Law's actions constituted "house arrest." Specifically, she argues that "she knew she was not

17

free to leave" because her home was "surrounded by police officers to prevent her from leaving" and because Law told her that he had obtained a warrant for her arrest.

We need not decide the merit of Moore's argument that she was, in fact, arrested because Law's actions placed her under "house arrest." A false arrest claim is not cognizable where, as here, police have obtained an arrest warrant. *See Rodriguez v. Ritchey*, 539 F.2d 394, 401 (5th Cir. 1976) ("The law is plain that an officer who arrests someone pursuant to a valid warrant has no liability for false arrest . . . ."); *see also Brown*, 608 F.3d at 734 ("An arrest *without a warrant* and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest.") (emphasis added). Here, it is undisputed that Law obtained a warrant, and Moore does not challenge whether the police had a sufficient basis of probable cause to support that warrant. Accordingly, even if she could show that Law's actions constituted an arrest, the existence of a lawfully obtained and valid warrant precludes her claim for false arrest. We therefore affirm the district court's dismissal of her claims against Law.

**AFFIRMED.**